Plank Road Co. vs. Kline—Kline vs. Plank Road Co. (Consolidated).

No. 13,981.

St. Joseph Plank Road Co. vs. Mrs. Fannie A. Kline.
Mrs. Fannie A. Kline vs. St. Joseph Plank Road Co. (Consolidated).

## Syllabus.

1. The police juries throughout the State have plenary power with respect to the establishment of public roads in the parishes, and have no less power with respect to the discontinuance, or abandonment, of such roads, and it is within their discretion to establish a toll road, upon the site of a free road, or elsewhere.

2. The authority of the police juries, with respect to the construction and management of toll roads, is as broad as that which concerns the establishment of such roads, and they may build, maintain, and operate such roads, directly, or they may contract with others, whether corporations or individuals, for their construction, maintenance, and operation, and the courts will not inter- fere with the discretion vested in them unless it appears that such discretion has been grossly abused.

3. An ordinance of the police jury of Tensas parish whereby the St. Joseph Plank Road Company is authorized to construct, maintain, and operate a toll road over a road extending three miles westward from the parish seat, which road was, at the time, a public highway, but for many years, had been a toll road, is not in contravention of Article 48 of the Constitution, as con- ferring a monopoly on said company ; or of Article 58, as granting the prop- erty of the parish to a private corporation ; the obligation being imposed upon the company to reconstruct and maintain the road, and the tolls au- thorized to be collected, being limited to an amount sufficient to pay the com- pany for the use of its money and for its services.

4. Should unjust discrimination in the tolls charged be shown, in a proper pro ceeding, a remedy would be afforded.

APPEAL from the Tenth Judicial District, Parish of Tensas.— *Dagg, J.*

*Snyder & Clinton* and *Hugh Tullis,* for St. Joseph Plank Road Com- pany, Appellee.

*Abner E. Green* (*Boatner, Dodds & Boatner,* of Counsel), for Mrs. Fannie A. Kline, Appellant.

## Statement of the Case.

The opinion of the court was delivered by

Monroe, J. The St. Joseph Plank Road Company sues for the recovery of tolls alleged to be due by Mrs. Fannie A. Kline for the use

of a plank road established and maintained by said company. The defense relied on is that the police jury of the Parish of Tensas has undertaken to convert a public highway into a toll road and to give to a private corporation the exclusive control of it, and that such action is *ultra vires* and in contravention of Article 48 of the Constitution of the State.

Mrs. Kline, by separate suit, prays that the company be condemned to remove its gates and prohibited from exacting tolls for the use of said road, and that it be further condemned to pay her $2,500.00 as damages alleged to have been sustained in her business by reason of loss of patronage resulting from the exaction of tolls, and the two suits were consolidated, by consent. It appears from the evidence that the road in question is a public highway, extending three miles westward from St. Joseph, the parish seat of Tensas Parish; that from some time during the war, when the planking with which it had been provided was destroyed, up to 1876, it was impossible for planters, and others, to haul freight over said road during the wet season, and that its maintenance, in passable condition, is indispensable in order to enable such planters, and other persons, living in the country, back of St. Joseph, to reach the town and the Mississippi river, upon which it is situated, for the shipment of their crops, the obtention of their supplies, or the transaction of other business. It further appears that, in 1876, a company was organized, which, with the authority of the police jury, constructed a plank road on said highway and maintained the same, by means of tolls, for ten years, when its grant terminated, and it was succeeded by another company, which maintained said road under the same authority and by the same means for another ten years, when its grant expired, and that there was, then, an interval of two years, during which the road fell into bad repair, and that, upon December 5th, 1898, the present company, having been organized, was vested with authority to re-establish and maintain said plank road for still another period of ten years, agreeably to the terms of an ordinance adopted by the said police jury and reading as follows, to-wit:

"Be it ordained, by the police jury of the Parish of Tensas, that the
" following act of incorporation of the Saint Joseph Plank Road Com-
" pany be, and it is hereby indorsed and approved, and said company is
" hereby authorized to operate, maintain and control a plank road
" along the line of the public road described in the charter of said
" plank road company, as follows, to-wit: The public road leading ·

" from the town of St. Joseph in a westwardly direction to the terminus
" of the present existing plank road on the Avondale plantation. That
" the exclusive right of way over said road is hereby granted and
" secured to the said St. Joseph Plank Road Company, to begin on the
" 26th of January, 1899, and to continue for a term of ten years from
" said date. That said company shall have the right to charge tolls on
" said road for a term of ten years from the date hereof and, until
" otherwise provided, said rates of toll shall be fixed as follows:

\* \* \* \* \* \* .

(Then follow specifications of rates upon the various articles and
commodities likely to be carried over the road, after which the ordin-
ance proceeds:)

"Provided no toll shall be demanded of any person traveling on official
" business for the parish, State, Levee Board, or general government.
" That if any person shall pass on any portion of said plank road for
" any distance without paying, then and there, the legal rates of toll
" therefor, such person shall be deemed guilty of a misdemeanor, and,
" upon conviction thereof, before any court of competent jurisdiction,
" shall be punished by fine and imprisonment, or both, at the discretion
" of the court. That it shall be the duty of the said Saint Joseph Plank
" Road Company to maintain and keep said road in good condition and
" repair, and to regulate the rates of toll thereon from time to time;
" that the earnings of the said company shall never exceed a sufficient
" sum to maintain and keep said road in good repair, to pay the stock-
" holders the amount of their subscription, and to pay them 8 per cent.
" per annum interest on their investment. \* \* \* Further ordained
" that the franchise herein provided is granted upon the express condi-
" tion that, upon the expiration of the ten years herein mentioned, the
" said road shall be turned over to the parochial authorities in good
" condition and repair." It further appears that the cost of the road,
originally, with lumber at $14.00 per thousand, was about $4,000.00 per
mile and that with lumber at $18.00 per thousand, the present price, the
cost will be between $4,800.00 and $5,000.00 per mile, and that the
average life of the planks of which the road is built is about four
years. The president of the police jury gives the following explanation
of his action as a member of that body: "Q. Please state what
" reasons induced you, as a member of the police jury of this parish,
" to give your vote in favor of granting to the Saint Joseph Plank
" Road Company the right to operate its present plank road line, and

"to charge tolls for the use of the same? A. Because it was an "absolute necessity to connect the town of St. Joseph with the back "country. Q. Would you have considered it judicious, as a member of "the police jury, to have voted for an appropriation of $14,000.00 to "construct a free plank road over this line, with the knowledge that "the same was expensive to be maintained, and would have to be "renewed, at a like cost, every four years; and was the financial condi- "tion of the Parish of Tensas, at the time of the establishment of the "present plank road, such as to have permitted, or justified, such an "extraordinary expenditure? A. It would not have been judicious. "The condition of the parish, financially, would not have justified the "expenditure."

The clerk of the District Court gives the following testimony, which is abundantly supported, and is wholly uncontradicted, as to the conditions which render the plank road a necessity. Being asked as to the character of the country, population, etc., west of St. Joseph, he says: "The country is a flat, level country, to Tensas river, a distance of "about twenty miles, not densely populated; the ridge lands are used "for agricultural purposes, and, I should judge, not a fourth of the "land is in cultivation. Most of the population receive their freight, "and ship their goods, at St. Joseph, passing over the plank road. "This is specially true after the winter rains set in and the roads to the "other landings become impassable. I think, approximately, there are "fully three or four thousand bales of cotton hauled over the plank "road annually."

"The soil (over which the road passes) is a black, gummy, buckshot "soil, with which it is impossible to make a passable road during rainy "weather."

The evidence further shows that Mrs. Kline used the plank road, as operated by the predecessor of the present company, and has used said road, as now operated, altogether, for eleven years, or more, and that it has been her custom, as it has also been the custom of other solvent persons, to whom credit was given, to pay her tolls at the end of each year; and no question is raised as to the correctness of the figures representing the account sued on. It also appears that Mrs. Kline leased the premises, now occupied by her for the purposes of a store and residence, from the owner of Mt. Ararat plantation, of which they form part, upon October 12th, 1899, nearly nine months after the plank road company had assumed control, and that said premises are situated on

the plank road at a distance of about a mile from its western terminus and have no other means of access than by said road. It does not appear that Mrs. Kline is the owner of any land on said road. The capital stock of the company is fixed by the charter at $5,000.00. There was judgment in the District Court in favor of the company.

## OPINION.

There can be no doubt that the plank road is a vital necessity, and it is not denied that it has been maintained and operated, with occasional intervals, as a toll road, for a great many years, to the satisfaction of the community in which it is established. It does not appear that any owner of the land in the parish, whether contiguous to the road or otherwise, has complained of the manner of its administration, and no complaint from such source is now presented. Upon the contrary, the land owners appear to concur in the course pursued by the police jury and to approve of it, the present claimant being a lessee who took her present lease with full knowledge of existing conditions, and whose lessor remains silent. The statute law conferring authority upon police juries in such matters is embraced in the following provisions:

Act 115 of 1898, amending and re-enacting Section 2743 of the Revised Statutes so as to make said section read as follows, to-wit:

"Section 2743. The police juries shall have power to make all such " regulations as they may deem expedient."

   \*      \*      \*      \*      \*      \*

"Second. As to the proportion and direction, the making and repair- " ing of the roads, bridges, causeways, dikes, levees, and other high- " ways.

   \*      \*      \*      \*      \*      \*      \*

"Fifteenth. To grant permission and to determine the rate of toll to " be demanded by persons desiring to build a bridge, or make a turn- " pike road; *provided,* that in no case whatever the police jury shall " grant the right of toll for more than ten years."

   \*      \*      \*      \*      \*      \*      \*

R. S. Section 2750 (and 3364). "The police juries of all the parishes " of this State are authorized to pass all such ordinances as they may " deem necessary relative to roads, bridges and ditches, and to impose " such fines and penalties to enforce the same as they may think " proper, to be recovered and enforced by indictment and information,

" in the name of the State, or by ordinary process, before any court of
" competent jurisdiction, in the name of the police jury of the parish."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Sec. 3380. No person shall turn, alter, or change, any public road
" unless it be by order of the police jury, under the penalty of one
" hundred dollars for each month the road is turned out of its course,
" to be recovered—one-half to the use of the person suing for the
" same."

The learned counsel who represent Mrs. Kline, referring, in their
brief, to the views expressed by the judge *a quo,* as to the meaning and
effect of the Section (2750) 3364, quoted above, say: "He seems to
" have overlooked, or. disregarded, Section 3385, which declares all
" roads controlled and regulated by police juries, and all roads in open
" and common use twelve months prior to the passage of the act (1868)
" to be public roads, not to be closed, obstructed, or changed, without
" the consent of the contiguous property holders, and the approval of
" the police jury."

. An explanation of the circumstance to which attention is thus called
is, perhaps, to be found in the Act No. 101 of 1880, which reads: *"Be
it enacted,* etc., That Section 3385 of the Revised Statutes of 1870 be,
and the same is, hereby repealed," and which would seem rather to
emphasize the plenary grant to the police juries, as contained in the
section referred to by the district judge, the more particularly, as
affecting the authority of those bodies in the matter of turning, or
altering public roads, since, when the language of that section is con-
sidered in connection with that used in Section 3380, above quoted, it
becomes evident that the legislation was affirmatively intended to
remove the limitation, imposed by Section 3385, upon the power of the
police juries, and to leave the prohibition against changing or altering
roads, to apply only to individuals acting without authority from those
bodies. Referring to the grant of authority, as contained in the
Sections 2750 and 3364, as originally adopted, Mr. Justice Spofford, as
the organ of this court, made use of the following language, to-wit:

"The whole subject seems to have been confided to the uncontrolled
" discretion of the police juries." King vs. Police Jury, 12 Ann. 558.

In another case the court, speaking through the Chief Justice, said:
" As the police juries have power to make roads, we see no reason why
" the power conferred is not complete, and why the police jury may not,
" in order to avoid the expense of the appropriation of property,

" authorize the owners of the soil over which the road passes, to keep " certain gates, as was done in the case before us, thus securing the " right of way for the public with the least injury to the owner. The " police jury had the right to abandon the road altogether, as well as to " open it, and if they have determined that the public shall not exercise " the right of way, except as subject to the gates of owners, they have " only refrained from exercising all the power with which they are " invested. * * * What they have sanctioned as pertaining to the " road forms part of the same."

Hunsicker vs. Briscoe, 12 Ann. 170.

And to the same effect are the decisions in later cases. Parish of St. Martin *ex rel.* Baker vs. Delahoussaye, 30 Ann. 1092; Barrow vs. Hepler *et als.,* 34 Ann. 365; Sanders vs. Levy, 42 Ann. 407.

Applying to the instant case, the language used in the case of Hunsicker vs. Briscoe (*supra*), it may be said that, in converting a free dirt road, impassable during a great part of the year, into a toll plank road, available at all times, the police jury of Tensas Parish has refrained from exercising all the power with which it is invested, since it might have abandoned the road altogether, and, if it was competent to abandon the free road, it was competent to establish upon the same site, as upon any other site, a toll road to subserve the purposes which the free road did not subserve. "A turnpike is a public highway, differ-" ing neither in the responsibility for its proper maintenance, nor in " any other particular, from any ordinary highway. No additional " burden is imposed by changing a public highway into a toll road. " The change is not in the character of the servitude, but in the method " of sustaining the highway; in the one case it is sustained by taxes, in " the other by tolls." Am. and Eng. Ency. of Law, 1st Ed., Vol. 27, *verbo* Turnpike, page 325, notes 1 and 4. The police jury elected to have the road thus established built of plank. That fact, in no manner, affects the question, since a plank road may be as much a public highway as a road constructed of any other material. Craig vs. People, 42 Ill. 487. Nor, so far as we can see, does it affect the question that the police jury should have elected to build, maintain and operate the road, through the medium of a corporation and under the arrangement as made, rather than by means of money borrowed, and of a superintendent and laborers, and collectors, employed directly by it, the money so borrowed, and the employees so retained, being paid from the tolls collected by persons paid by the police jury for that special service.

The authority of the police jury, with respect to the management, is

as broad as that whereby it opens, changes, abandons or re-establishes, a public road, and the corporation acting as the agency through which the road is maintained, as well as constructed, in the one case, can no more be said to be vested with a monopoly, in violation of any constitutional provision, than could the superintendent and toll gate keepers, employed by the police jury, in the other case, the powers conferred upon such corporation being merely incidental to the discharge by the police jury, of its functions with respect to the roads of the parish, just as the regulation of commerce, in a limited sense, is incidental to the maintenance of State quarantine and to municipal control of wharves. A case for the interference of the courts might be presented if it were made to appear that a fraud had been, or was about to be perpetrated, or that the police jury had grossly abused the authority and discretion vested in it. But no such case is presented here. There is no charge of fraud or improper influence. On the contrary, the action taken appears to have been for the best interest of the community concerned in the subject matter acted on, and the mass of that community has for many years approved, and now approves, of that action. It is said, by way of argument, that the ordinance of the police jury contravenes Article 58 of the Constitution, in that it, in effect, gives to the Plank Road Company a right of way which it would otherwise have been compelled to buy, and also gives to said company the material constituting the plank road in existence at the date of the adoption of said ordinance. The answer to this is, however, fairly included in what has been said already. The police jury was called upon to determine what it would do with a dilapidated plank road, as to which the law invested it with plenary power, and it decided to turn it over, for reconstruction and maintenance, to a corporation created for that purpose, rather than undertake such reconstruction and maintenance itself, and, at the same time, to make it a toll road, and appropriate the tolls to what it considered the reasonable reimbursement of the contracting corporation. This does not appear to us to be the giving or granting of the property of the parish within the meaning of the article of the Constitution referred to. In conclusion, it may be remarked that there is some evidence in the record tending to show discrimination in the tolls charged, and that we entertain no doubt that, should unjust and persistent discrimination be established in a proper proceeding, a remedy would be afforded. There is, however, no error in the judgment appealed from, and it is, accordingly, affirmed.