April 2,
 1923.

## OPINION OF THE JUSTICES.

A statute imposing a tax upon dividends on interest from stocks, bonds and
 other interest-bearing credits and indebtedness, except savings bank deposits,
 at the average rate of taxation throughout the state, provides a reasonable
 and proportional assessment which is not invalid on the ground that it results
 in double taxation.

A statute imposing a like tax at a uniform rate different from that borne by
 other property would be unconstitutional.

A tax at a uniform rate upon gasoline or like motor vehicle fuels sold in this
 state for consumption in the operation of vehicles upon the public highways,
 the proceeds of the tax being expended on the highways, is to be regarded
 as a toll for the use of the highways, and is not in violation of the constitu-
 tion. Constitutional limitations upon the taxing power have no application
 to such a levy.

A tax upon collateral inheritances graded according to the amount of property
 passing lacks that degree of equality and uniformity which can be given to
 an inheritance tax, and is not authorized by the constitutional amendment
 permitting taxes upon inheritances.

STATE OF NEW HAMPSHIRE, HOUSE OF REPRESENTATIVES,
Concord, N. H., March 21, 1923.

Hon. FRANK N. PARSONS,
Chief Justice of the Supreme Court,
Franklin, N. H.

Dear Sir:

The following is a copy of a Resolution passed by the House of
Representatives today:

Resolved: That the Speaker of this House be and hereby is directed
to obtain from the Justices of the Supreme Court their opinions upon
the following questions:

Would any Constitutional provision be violated by imposing a
tax, —

(1) Upon income derived as dividends and interest from stocks,
bonds and other interest-bearing credits and indebtedness, except
savings bank deposits, at the average rate of taxation determined
as now by law required when applied to the property of railroads,
telegraph companies, etc.?

(2) Upon income described above, at any reasonable rate so long
as the same rate is applied to all such income taxed?

In propounding the foregoing questions it is to be assumed that

any law enacted would provide for exemptions of non-taxable securities required by the Federal Constitution or statutes enacted thereunder, or required by any state contracts of exemption which may not lawfully be impaired, — that it would provide for the taxation of national bank stock or the income therefrom in such manner only as Congress has permitted, — and, further, that it might provide for exemption of income up to a certain reasonable amount.

(3) Upon gasoline or motor vehicle fuels of like nature sold in this state, at the flat rate, for example, of two cents on every gallon sold, or an excise tax on the sale of gasoline?

In propounding the question under (3) it is to be assumed that the revenue derived would be expended for the protection, care, maintenance, repair or construction of highways, and that the law would not attempt to interfere with interstate commerce.

(4) Would any Constitutional provision be violated by substituting for the existing flat rate of five per cent a series of rates, graduated or progressive according to the amount of property which passes by will or inheritance to "collaterals" as they are described in that part of Section 1, chapter 37, Laws of 1919, which reads, — "and all such property which shall pass to or for the use of any other person . . . shall be subject to a tax of five per cent of its value for the use of the state"?

Respectfully yours,

WILLIAM J. AHERN,
Speaker of the House of Representatives.

Hon. WILLIAM J. AHERN,
Speaker of the House of Representatives.

Sir:

In response to yours of March 21st, *ult.*, transmitting a Resolution of the House passed that day, the undersigned, justices of the supreme court, submit the following in answer to the inquiries therein contained:

I. In 1915 the House of Representatives required our opinions upon the question "whether any constitutional provision would be violated by imposing a tax at the uniform rate upon money received as interest or dividends." Upon this question the justices were not agreed. Four, understanding "the uniform rate" to mean the rate applied in the taxation of other property in the taxing district, failed "to discover any substantial ground upon which" they "would be justified in advising that the proposed act is clearly in violation

of any provision of the state constitution," while the opinion of one of the justices was adverse to the constitutionality of the proposed legislation.

The first question of those now submitted is a repetition of the question asked in 1915. The views then held are still entertained. There seems to be no occasion for the justices then answering to add to what was then said. The opinions then submitted are printed in the Journal of the House for 1915, page 435, and in the 77th Volume of the Law Reports, page 611.

II. This question implies that the rate of the proposed tax is to be different from that upon other property. If by any process of reasoning a rate can be reasonable which is unequal or disproportional, reasonableness of that character is outside our constitution, and we are all agreed that a tax at an arbitrary rate which is not a proportional distribution of public expense is not permitted by the fundamental law. *State* v. *Express Co.*, 60 N. H. 219.

III. The third inquiry relates to "a tax . . . upon gasoline or motor vehicle fuels of like nature sold in this State, at the flat rate, for example, of two cents on every gallon sold, or an excise tax on the sale of gasoline." A tax levied upon the privilege of selling gasoline is clearly outside the power to levy "proportional and reasonable assessments, rates and taxes." *State* v. *Express Co.*, 60 N. H. 219; *Curry* v. *Spencer*, 61 N. H. 624. But your inquiry seems to suggest that what is intended is not the levy of a tax, but rather that the purpose in view is to fix a charge, or toll, for the use of the public highways of the state. It is within the legislative power to provide that all highways, or any specified highways, shall be toll roads, and open to travel only upon the payment of a specified charge.

"Although, ordinarily, turnpikes are built and owned by corporations created by the State, for the purpose of constructing and maintaining them, what the State may do indirectly through such agencies it may do directly; that is, it may itself lay out and construct such improved public roads, and charge reasonable tolls to all persons using the same." *Kane* v. *Titus*, 81 N. J. L. 594, 597. Many instances might be cited where governmental undertakings are supported in whole or in part by charges made upon those who avail themselves of the advantages afforded thereby. Water works, sewers, wharves, locks and canals are often maintained in this manner. Charges made in this way are not taxes. "There is no analogy between the imposition of taxes and the levying of tolls for

improvement of highways, and any attempt to justify or condemn proceedings in the one case by reference to those in the other must be misleading. Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are compensation for the use of another's property, or improvements made by him." *Sands* v. *Manistee &c. Co.*, 123 U. S. 288, 294.

Tolls that are reasonable in amount, and not discriminatory, have uniformly been upheld. Constitutional limitations upon the taxing power have no application to such a levy. *Carson* v. *Brockton*, 175 Mass. 242; *S. C.*, 182 U. S. 398; *Merrimack River Savings Bank* v. *Lowell*, 153 Mass. 556; *Silkman* v. *Water Commissioners*, 152 N. Y. 327; *City of East Grand Forks* v. *Luck*, 97 Minn. 373; *Wagner* v. *Rock Island*, 146 Ill. 139; *Alter* v. *Cincinnati*, 56 Ohio St. 47; *Jones* v. *Water Commissioner*, 34 Mich. 273; *Huse* v. *Glover*, 119 U. S. 543; *Hendrick* v. *Maryland*, 235 U. S. 610.

It is a matter of common knowledge that since the advent of the use of automotive vehicles upon highways large sums have been expended in making the conditions more favorable for that class of traffic. No reason appears why the legislature may not impose upon those who accept the benefits of such highway improvement and maintenance a reasonable charge for the use made. It is upon this ground that the state registration systems for automobiles have been sustained. The purpose of these laws is "to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious." *Hendrick* v. *Maryland*, *supra*, 622.

It is apparent that the exaction of a toll, as in the case of a bridge, could not be put into practical operation in reference to the present-day use of highways generally. Some other measure of the use must be found, and the determination of what measure shall be adopted is within the province of the legislature. "No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows." *Kane* v. *Titus*, *supra*, 598. "It is clearly within the discretion of the State to determine whether the compensation for the use of its highways by automobiles shall be determined by way of a fee, payable annually or semiannually, or by a toll based on mileage, or otherwise." *Kane* v. *State of New Jersey*, 242 U. S. 160, 168.

While the payment proposed will not be an exact measure, yet it will so far approximate thereto as to be within the power of the

legislature to adopt. The charge cannot be imposed upon sales of gasoline, etc., generally, but only when the commodity is sold for consumption in the operation of vehicles upon the highways. A charge so limited amounts to the same thing, in substance, as a toll for the use of the highways, and may lawfully be imposed by the legislature.

IV. In 1911 the House of Representatives asked the opinion of the justices as to the validity of proposed legislation imposing a graduated inheritance tax upon property passing to lineal descendants.

Upon the question of the validity of provisions determining the rate to be imposed by the amount of property concerned, the justices in the time then available were unable to answer the question. In 1919 a statute was enacted graduating the tax substantially as proposed in 1911. No case under this act has been brought before the court. The present inquiry as to the legality of such a tax upon collateral inheritances presents the same question.

As the House has seen fit to re-open the question which no one interested has so far cared to raise, we have no choice except to give the House the opinions we entertain.

In 1878 the legislature adopted "an act to defray the cost of probate courts." Laws 1878, c. 74. This act provided that "all estates settled in the probate courts of this state and all transfers of property from the dead to the living, by gift, bequest or devise, and every succession made under the laws of this state, regulating the distribution of intestate estates . . . shall pay one per cent on the value of said estates . . . provided that all legacies or property passing by will or by the laws of this state to husband or wife, children and grandchildren of the person who died possessed as aforesaid, shall be exempt from tax or duty." This provision was incorporated in c. 64 of the General Laws, and a further limitation upon the exemption having been repealed (Laws 1879, c. 57, s. 16) the constitutionality of the tax or duty imposed by the foregoing language was assailed in *Curry* v. *Spencer*, 61 N. H. 624. In this case it was decided in 1882 that the tax thereby sought to be imposed could not be upheld because "immunity from disproportional taxation being expressly reserved in our bill of rights, and the power of proportional taxation only being granted," no ground was found upon which the tax could be upheld, "for" it is said in the opinion "if it is to be regarded as a tax on property, it is open to the objection of unequal and double taxation, and if it is to be regarded as a tax upon a civil right or privilege, it is discriminating and dispro-

portional." This decision was accepted as a correct exposition of the principles of the existing constitution as applied to legislation of this character, and at the next session of the legislature the statute was repealed *in toto*. Laws 1883, *c. 50.* In the constitutional convention of 1902 propositions apparently intended to leave the whole matter of taxation to the discretion of the legislature were rejected, as was also a resolution introduced by Mr. Ham of Portsmouth authorizing the imposition of "assessments, rates, and taxes upon the estates of deceased persons, or upon bequests, devises or inheritances, exceeding $10,000, said rates to be graded or proportioned in such way or manner as the general court may direct." Jour. Conv. 1902, pp. 249, 250, 594, 628. The resolution finally adopted, when presented to the convention for approval, made the proposed article read: "The public charges of government, or any part thereof, may be raised by taxation upon polls, estates, and other classes of property including franchises and the transfer or succession of property by will or inheritance." By amendment at this stage the words "the transfer and succession of property" were stricken out and the words "property when passing" inserted in their place. Jour. Conv. 1902, pp. 595, 601, 625, 626.

The language adopted and the discussion show conclusively that the convention had in mind the taxation of property as distinguished from privilege, and that it was intended to meet the objection raised in *Curry* v. *Spencer* that as a taxation of property an exaction of this character was "unequal and double taxation." In this form the amendment was submitted to and adopted by the people. In *Thompson* v. *Kidder*, 74 N. H. 89, the existing statute, which exempts from its provisions property passing to direct heirs and for charitable and public purposes, was attacked because of necessary conflict with fundamental provisions of the constitution and because it did not apply to all property passing by will or inheritance. In this case it was thought to be unnecessary to define with scientific accuracy the nature of the tax because of the express language by which it was authorized. The statute was upheld in spite of the disproportion, inequality and double taxation necessarily involved when the tax was considered in relation to other taxation, because its express authorization disclosed an intent on the part of the people to subject themselves to such disproportion, inequality and double taxation as could not be avoided if the tax were imposed. The law was found to be an equal law as applied to all persons alike, and the objection that all property was not taxed was supported by the

familiar rule in this jurisdiction that only such property is taxable as the legislature declares shall be taxed. Whether the theory of the amendment and the law that the exaction is a tax upon property is correct, or not, is immaterial upon the question of power to impose such a tax, but the plain understanding that it is a property tax limits the extent of the power in its practical application. In this State probably no constitutional principle is better understood than that the taxation of property requires a proportional valuation and a uniform rate. It is conceded by all the authorities that a property tax graded by the amount of property is in conflict with the provisions requiring equality and uniformity which pervade all the constitutions.

The proposition whose constitutionality is submitted by the resolution of the House of Representatives contemplates taxation of this character by a rate increasing arbitrarily at fixed points according to the value of the property upon which it is imposed.

The proposal apparently is an attempt to exercise the powers proposed in the resolution of Mr. Ham which was rejected by the convention. Upon the question of the constitutionality of such legislation the cases are in conflict. They have all been carefully examined, but in the view of the question herein taken their discussion would not be useful. Jurisdictions in which to sustain the legislation it has been necessary to investigate the nature of the tax and in which it has been ascertained that it is a privilege and not a property tax, and that hence the general limitations applicable to property taxation are not involved, do not aid here where taxation of property passing by will or inheritance is specifically authorized. The only question is the extent of the power intended to be conferred by the amendment of 1903. In the light of the proceedings in the convention and the language in which the proposed amendment was submitted to the people, it seems to us clear that the matter in hand was regarded, perhaps incorrectly, as a property tax, and that from the permission given for the imposition of such a tax it cannot be inferred that it was intended that the ordinary and familiar rules of property taxation should be disregarded except in so far as is necessary to the imposition of any tax of this character. An inheritance tax can be made equal and proportional so far as to render it uniform upon all property upon which it is imposed. The questions submitted, in our opinion, are answered by the statement in the opinion in *Thompson* v. *Kidder,* where after reaching the conclusion that "the purpose to authorize such a tax being clear, the intent to

avoid any existing provision contrary thereto follows" it is said: "but although the power to impose an inheritance tax is clear, it must be exercised so far as possible in accordance with all other provisions of the constitution."

The proposed legislation lacks equality and uniformity which can be given to an inheritance tax, and in our opinion is beyond the power intended to be given by the amendment of 1903.

FRANK N. PARSONS,
JOHN E. YOUNG,
ROBERT J. PEASLEE,
WILLIAM A. PLUMMER.

April 2, 1923.

To Hon. WILLIAM J. AHERN,
*Speaker of the House of Representatives:*

In accordance with the established practice (77 N. H. 611, 618), the undersigned justice separately submits the following answer to the first question presented in your communication of March 21:

It is understood that your question presupposes the exemption from taxation of the several classes of property yielding the income proposed to be taxed, or the omission of such classes from the list of taxable property. Upon this assumption, the question is in substance the same that was considered and answered by the justices of this court in 1915. 77 N. H. 611. At that time, four of the justices advised that the proposed legislation was within the power of the legislature. In that opinion, the learned justices marshalled the available authorities favorable to the constitutionality of the proposed act as an assessment in the nature of an income tax, but concluded that it was unnecessary to express an opinion as to the validity of an income tax as such, since they found sufficient justification for the proposed act as a property tax (*p.* 617). The remaining justice expressed the view that the contemplated tax was an income or excise tax, and as such was wholly without constitutional warrant (*p.* 618), but further concluded that whether it were deemed an income or a property tax, it was unauthorized. After an examination of these opinions and the authorities cited, and after such further investigation as the limited time has permitted, I find myself in accord with the conclusion of the minority.

Difference of opinion as to the character of a tax on incomes is not confined to the members of this court. There is a decided conflict of authority among the few cases in which courts of last resort have

passed upon the question whether a tax on incomes is a property tax. 11 A. L. R. 313, *note* (1920). There are well-considered authorities which agree with the minority of 1915 that a tax upon incomes is an excise tax. *Railroad Co.* v. *Collector*, 100 U. S. 595, 25 L. ed. 647; *Springer* v. *United States*, 102 U. S. 586, 26 L. ed. 253; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 55 L. ed. 389, 413. The distinction between an excise tax and a property tax, and the reasons why the former is in violation of the provisions of the constitution, are exhaustively and ably treated in the minority opinion of 1915. It is not deemed necessary further to discuss this feature here. It is sufficient to say that in so far as the proposed tax upon incomes is regarded as an excise tax, that is, a tax upon the transfer, it is not a tax upon "polls, estates and other classes of property including franchises and property when passing by will or inheritance," as limited by the constitution, Part II, Art. 6, as amended in 1903. This lack of constitutional authorization is entirely independent of the lack of proportionality in the tax (Const., Part II, Art. 5) due to the impossibility of correlating taxes of such diverse natures as property taxes and income taxes. There is thus a double constitutional barrier to the tax if it be construed as an income or excise tax.

But there seems to be no attempt to justify the proposed tax as an income tax, that is, as a tax upon the transfer of the income from the debtor to the creditor. It is sought rather to distinguish it from such a tax. It is supported as a tax upon specific property in the hands of the creditor, namely the money or other medium of exchange received by him by way of income on credits. In other words, it is sought to focus the tax-making camera upon the fund the instant following its receipt, after it has lost character as income and has become property, but before it has become a part or parcel of other property of its kind in the hands of its owner. This appears to be a statement of the plan most consistent with the theory that the proposed tax is a tax upon property other than upon the credit from which it is derived. Stated thus most favorably to enable the contemplated legislation to pass the constitutional barrier limiting taxation to "polls, estates and other classes of property" it is, in my opinion, still in conflict with the further constitutional requirement of proportionality. Const., Part II, Art. 5.

It is true that the plan of taxation stated in the question avoids disproportion in the rate, but it does not avoid the disproportion arising from applying the rate to only a part of the value of the

property which is, in fact, sought to be reached. This becomes evident when we analyze what is to be done. It is proposed to remove from the list of taxable property stocks, bonds and other interest-bearing credits and indebtedness (and presumably cash on hand), and to substitute as a new taxable class the income derived therefrom as dividends and interest, whenever received within the taxable year, disregarding their form and character as well as their existence or non-existence on the taxing date. The proposed act would by indirection disregard the rule of proportion, not by applying a different rate, nor by directly assessing "stocks, bonds and other interest-bearing credits and indebtedness" at a percentage of their value, but by dividing each class into two parts, principal and income, and assessing the smaller part at the uniform rate and exempting the larger part.

As respects the character of an income tax, however, courts have not only differed upon the question whether it is an excise tax or a property tax, but courts holding the latter view are again divided as to whether it is a tax on the property in the specific income or upon the credit from which it is derived. If it be a property tax, the latter view seems to me to be the correct one. "A tax upon income from money on deposit or at interest from bonds, notes or other debts due, and as dividends from stocks, coupled with exemption from all other taxation of the principal from which such income flows, is in substance and effect a tax upon the property from which it is derived. A tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind, that is, it produces property and not something different. It does not matter what name is employed. . . . In its essence a tax upon income derived from property is a tax upon the property." *Opinion of the Justices,* 220 Mass. 613 (1920); *Pollock* v. *Company,* 158 U. S. 601, 39 L. ed. 1108. It is useless to disguise the plain facts by quibbling over the name to be given to the proposed tax, or by disregarding the inevitable operation of the proposed legislation. Until income has been paid over to the creditor, it is a part of the credit. When received by the creditor, it immediately takes on the character of the class of taxable or non-taxable property of which it becomes a part. To reason otherwise is to rest a conclusion upon a theory that income once received remains a separate entity for the purpose of taxation and for no other purpose, when, as a matter of fact, it is income only in its transition. To consider that upon its receipt it

is not immediately swallowed up in the class of "property" to which it is added, whether that class be money on hand or money at interest, etc., is by fiction to apply to this piece of property a constructive existence as a separate fund, contrary to the truth. The one permissible inequality under the constitution is that existing between taxed and untaxed property. 76 N. H. 609. But the implied power of the legislature to classify property as taxable and non-taxable has never been considered as authorizing the subdivision of a given class of property into parts which can be identified only by fictitious or constructive distinctions. The principle is not materially different whether we call it "income" which it has been but which it is not, or whether we call it what it is, a "percentage" either of the money invested or of the money on hand with which immediately upon its receipt it becomes indistinguishably mingled. It cannot be singled out from the class of which it is a part and made taxable in disregard of the taxability or otherwise of the remainder of its class, or taxed at a different rate than such remainder, without violating the constitutional rule of proportion.

The average rate of taxation for 1922 was 2.44% (Tax Commissioners' Report, 1922, p. 3). It can scarcely be claimed that a tax at this rate upon the income of all stocks, bonds and other interest-bearing credits and indebtedness will impose a tax upon these classes of property proportionate to the taxes assessed upon other property. "The constitutional rule of equality requires a proportional and equal valuation of the different kinds of property." Company v. Manchester, 70 N. H. 200, 204; Opinion of Justices, 76 N. H. 588, 593.

If by indirection the result sought by the proposed legislation can be accomplished as respects money at interest, it can be accomplished as to any other subject or class of taxable property. For instance, the advocates of protection of growing timber might, without the constitutional amendment they have been seeking, find a remedy for their difficulty in an act assessing the appraised value of the current year's growth of the timber and by exempting from taxation the balance of its value. Or, if it would be more in accordance with justice, such taxable value might be fixed at 6% as a fair average and exempting the other 94% of its value. Calling it "annual income" or "annual growth" does not create a character not otherwise existing, justifying a classification as a distinct class of property.

In other words, disproportion in taxation within the meaning of the constitution can be accomplished as effectually by taxing a part of a given class of taxable or non-taxable property and giving it a

fictitious name, as by varying the rules governing the ascertainment of value, or by varying the rate. There is no limit to the diverse classifications which might be made once we embark on this method. To adopt such a method would be as effectual an elimination of the word "proportional" from the constitution as if the people had adopted the recent proposed amendment. The people have declined to do it. It cannot be done by judicial construction.

The same principles apply to the consideration of the second question. In my opinion, the first and second questions should be answered in the negative. As to the third and fourth questions propounded, I join with the other justices in the answers given in their opinion.

LESLIE P. SNOW.

April 2, 1923.