Circuit Court of Appeals, Ninth Circuit.
July 15, 1940.

John A. Lathanan, Jr., of Fairbanks, Alaska, for appellant.

Chas. E. Taylor, of Fairbanks, Alaska, and Lillick, Geary, Olson & Charles, of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

PER CURIAM.

Upon consideration of motion of appellant for dismissal of the appeal herein, ordered motion granted, that the appeal herein be dismissed, that a judgment of dismissal be filed and entered accordingly, and mandate of this court in this cause issued forthwith.

### GORDON v. NASH et al.
No. 4372.

District Court of Alaska, Fourth Division. Fairbanks.
July 26, 1940.

Clyde R. Ellis, of Anchorage, and J. C. Winter, of Fairbanks, for plaintiff.

Ralph J. Rivers, U. S. Atty., of Fairbanks, for defendants.

PRATT, District Judge.

1. This cause is before the court upon a demurrer to the complaint on the grounds:

(1) That it does not state a cause of action;

(2) That the Secretary of the Interior, the Honorable Harold L. Ickes, is an indispensable party defendant;

(3) That the United States of America is an indispensable party defendant.

From the complaint the following general facts are deducible: In 1902 gold was discovered in the vicinity of where the Town of Fairbanks, Alaska, now stands. In 1903 there followed a stampede of prospectors, businessmen, etc., from the coast town of Valdez, Alaska, to the scene of the gold discovery. They established a highway upon that route over unreserved public lands of the United States and kept and maintained the same as a public highway during the years 1903, 1904, and 1905.

By an Act of Congress, approved January 27, 1905, 33 Stat. 616, and an amendment thereof of May 14, 1906, 34 Stat. 192, 48 U.S.C.A. §§ 41, 47, 161–169, 321–325, 329,

the Congress of the United States authorized the Secretary of War to construct and maintain roads in Alaska which in his judgment and in the judgment of a Board of Road Commissioners, to be appointed by him, were needed and would be of permanent value for the development of Alaska. Under this act the Secretary of War of the United States, by and through the said Board of Road Commissioners, did, in 1906, take charge of the maintenance and improvement of the above-mentioned highway. It was officially named the Richardson Highway.

The 371-mile road from Valdez to Fairbanks crossed the Tanana River at McCarty, Alaska, 280 miles from Valdez and 91 miles from Fairbanks. A ferry was constructed and maintained at that point from 1906 to the present time.

The Secretary of War continued his supervision over said highway until June 30, 1932, and the road was at all times prior to said date a free public highway.

By an Act of Congress, approved June 30, 1932, 47 Stat. 446, 48 U.S.C.A. §§ 321a to 327, the duties and rights of the Secretary of War and the Board of Road Commissioners as to roads in Alaska were transferred to the Secretary of the Interior. It was provided in that act: "With the approval of the President, the Secretary of the Interior shall have power, by order or regulation, to distribute the duties and authority hereby transferred * * * as he may deem proper to accomplish a more economical and effective organization thereof, and to make rules and regulations governing the use of roads, trails, and other works, including the fixing and collection of tolls where deemed necessary and advisable in the public interest." 48 U.S. C.A. § 321b, Sec. 149, C.L.A.1933.

On the 25th of March, 1935, the Secretary of the Interior made the following regulation governing the use of said highway:

"Tolls: For transportation of merchandise or freight over the Richardson Highway; there shall be charged and

collected at or adjacent to the McCarty Ferry on the Tanana River, tolls equal to two and one-half (2½) cents per ton of such merchandise or freight passing that point multiplied by the number of miles such merchandise or freight has been or is being carried over the said highway; No vehicle hauling such merchandise or freight shall be allowed to pass the designated toll station except upon payment of the tolls as herein provided. It shall be the duty of the Governor of Alaska, as ex-officio Commissioner for the Interior Department, to cause the collection of the tolls to be made in such manner as may be found most convenient and practicable, and all moneys so collected shall be deposited in the Treasury of the United States as miscellaneous receipts.

"The usual ferry charges are not affected by these regulations."

The plaintiff is engaged in transporting freight from Valdez to Fairbanks by truck for hire and has an investment of several thousand dollars in equipment for said business. Upon the 4th day of September, 1939, he sought the transportation of his truck loaded with fuel oil by the McCarty Ferry across the Tanana River bound for Fairbanks. He was refused ferriage unless he paid, in addition to the ferriage charge, the toll mentioned in the regulations. He refused to pay the toll and was not permitted to transport his truck across the river. The defendants have been designated by the Secretary of the Interior as collectors of tolls under the regulations, and plaintiff alleges that, unless restrained by an injunction of this court, they will continue to harass and annoy him by refusing to permit him to ferry his truck across the river to his irreparable damage.

More detailed allegations of the complaint will be mentioned in the discussion of the case hereinafter.

2. The Constitution of the United States, in Article IV, provides that Congress shall have "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *." Section 3, cl. 2.

In Binns v. United States, 194 U.S. 486, 24 S.Ct. 816, 817, 48 L.Ed. 1087, 2 Alaska Fed. 291, it is stated: "It must be remembered that Congress, in the government of the territories as well as of the District of Columbia, has plenary power, save as controlled by the provisions of the Constitution. * * * It may legislate directly in respect to the local affairs of a territory, or transfer the power of such legislation to a legislature elected by the citizens of the territory. * *. * "

Up to August 24, 1912, Congress itself legislated for the Territory of Alaska. By an act approved that day (37 Stat. 512, 48 U.S.C.A. § 21 et seq.), it provided for a Territorial Legislature for Alaska. It did not give up its rights to also legislate directly for Alaska, but gave limited power to the Legislature to act within prescribed limits.

The act provided: "The authority granted to the legislature by the preceding section [23] of this chapter [title] to alter, amend, modify, and repeal laws in force in Alaska shall not extend * * * to the act entitled 'An act to provide for the maintenance of roads, * * *' approved January 27, 1905, and the several acts amendatory thereof [sections 41, 47, 161 to 169, 321 to 325, and 329 of this chapter]. * * * " 48 U.S.C.A. § 24, section 464, C.L.A.1933.

By an act of Congress, approved May 14, 1898, 30 Stat. 411, Sec. 6, 48 U.S.C.A. § 416, Sec. 191, C.L.A. 1933, Congress provided: "The Secretary of the Interior is authorized to issue a permit, by instrument in writing, in conformity with and subject to the restrictions herein contained, unto any responsible person, company, or corporation, for a right of way over the public domain in Alaska * * * to construct wagon roads * * * together with the right, subject to supervision and at rates to be approved by said Secretary, to levy and collect toll or freight and passenger charges * * *. And no right to construct a wagon road on which toll may be collected shall be granted unless it shall first be made

to appear to the satisfaction of the Secretary of the Interior that the public convenience requires the construction of such proposed road * * *: Provided, That if the proposed line of road in any case shall be located over any road or trail in common use for public travel, the Secretary of the Interior shall decline to grant such right of way, if, in his opinion, the interests of the public would be injuriously affected thereby. * * *"

A later section of said act of Congress, approved May 14, 1898, provided: "Congress hereby reserves the right at any time to alter, amend, or repeal this chapter [sections 411 to 419, 421, 423, and 461 to 465 of this title] or any part thereof; * * *." 48 U.S.C.A. § 418.

No modification or repeal of the last above-mentioned act has been made by Congress.

From the above it is clear that Congress did not intend to and did not, in fact, relinquish to the Legislature any power with reference to the establishment of toll roads upon the highways of Alaska.

3. "Subject to constitutional limitations, the state has absolute control of its public streets and highways, including those of its municipal and quasi-municipal corporations." 13 R.C.L. 163.

"This power to control public streets and to provide for proper adjustment of conflicting rights and interests therein is a police power." 13 R.C.L. 165.

"A toll road is a public highway, established by public authority for public use and is to be regarded as a public easement and not as private property." 26 R.C.L. 1396.

"It is within the legislative power to provide that all highways, or any specified highways, shall be toll roads." 65 C.J. 1127; also page 1144.

"The conversion of a free public highway into a toll road may be authorized." 65 C.J. 1127.

■ The highway from Valdez to Fairbanks, having been established by the public over and across unreserved public lands of the United States, vested in them a right of way for a public highway under the laws of the United States. Sec. 2477, R.S.U.S., Sec. 932, Title 43, U.S.C. A. Though the highway was held in trust for the public by the United States, there seem to be no authorities denying to a state or to the United States, legislating as a state for the territory, the right to change a free public highway into a toll road whenever it deems the same advisable.

■ "Making and regulating roads, ferries, and bridges, are the proper subjects of political action, and are necessarily governed by the will of the law making power, or of those to whom it may be delegated." Smith v. Harkins, 38 N.C. 613, 44 Am.Dec. 83.

In re Opinions of the Justices, 81 N.H. 552, 120 A. 629, 630, the court said:

"Tolls that are reasonable in amount, and not discriminatory, have uniformly been upheld. * * *

" 'It is clearly within the discretion of the state to determine whether the compensation for the use of its highways by automobiles shall be determined by way of a fee, payable annually or semiannually, or by a toll based on mileage, or otherwise.' "

In State v. Mayo, 106 Me. 62, 75 A. 295, 298, 26 L.R. A.,N.S., 502, 20 Ann.Cas. 512, it was held that the right to use the public streets is not an absolute and unqualified right, but is subject to be limited and controlled by the sovereign authority, the state. As the Legislature specially authorized the town to close certain designated streets to automobiles, ordinances duly passed in conformity therewith, excluding automobiles from the same, were valid.

The defendant alleged the ordinances denied him equal protection of the law and the enjoyment of liberty and the pursuit of happiness, guaranteed by the Constitution. He

also claimed the ordinance was unreasonable and unnecessary and special legislation.

The court held the ordinance valid, stating, "The Legislature determines if the law is reasonable, and will promote the public welfare, and its determination is conclusive. Such is the well settled law."

In Tillamook County v. Wilson River Road Co., 49 Or. 309, 89 P. 958, the state law provided, that, whenever a road is so located that there is little or no labor along the line of it, the county may lease it to a corporation to open, improve, and keep the same in repair for a period not exceeding ten years.

The authority of the county to lease a free public road to a private company to repair and operate as a toll road was upheld.

In St. Joseph Plank Road Co. v. Kline, 106 La. 325, 30 So. 854, where the statute provided that police juries of each county should have jurisdiction over the roads and power to make regulations concerning the same, it was held that they had the power necessary to change a public road into a toll road.

4. "While the legislature may not delegate any powers purely legislative unless expressly directed or permitted by the constitution, it may delegate its other powers and may confer discretion in the administration of the law."   16 C. J.S., Constitutional Law, § 133, 337

"With the growing complexity of modern life, the multiplication of the subjects of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the legislature, and toward the approval of the practice by the courts;   *   *   *."   16 C.J.S., Constitutional Law, § 133, 342.

With the above general principles in mind the question of whether Congress has delegated to the Secretary of the Interior a purely legislative power relative to the imposi-

tion of tolls on the Richardson Highway, or whether it is a mere administrative function, should be examined.

In the case of United States v. Chemical Foundation, Inc., 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131, the Trading with the Enemy Act, 50 U.S.C.A. Appendix, § 1 et seq., gave the President the right to sell, upon such terms as he might deem proper, any of the enemy property which had been seized. It was held that this was not a delegation of legislative power.

In Bloxton v. State Highway Commission, 225 Ky. 324, 8 S.W.2d 392, 395, the Legislature had authorized the State Highway Commission to select bridges for condemnation and to convert them into toll bridges and to issue bonds to be paid off by tolls. The court held: "While legislative powers may not be conferred upon any executive board, administrative powers may be conferred upon a board. The rate of toll to be charged, the rate of interest to be paid on the bonds, and the time the bonds shall run before maturity, are all matters to be determined under the facts, and circumstances according to a reasonable judgment. Such matters are administrative; they are not legislative."

In State v. Yelle, 195 Wash. 636, 82 P.2d 120, the state statute empowered the Washington Toll Bridge Authority to provide for toll bridges "wherever the same is considered necessary or advantageous and practicable * * *." Rem.Rev.Stat. § 6524–3. The decision of the Toll Bridge Authority to build a toll bridge and the expenses incurred thereunder were upheld.

In Village of Waterbury v. Melendy, 109 Vt. 441, 199 A. 236, 240, the court said: "It was early found to be expedient in the American governments, national and state, for the Legislatures to delegate to subordinate administrative agencies many of the duties connected with the application of the laws. * * * Such delegations which have been upheld by the courts include * * * the authority vested in certain officials to regulate and control the operation of motor vehicles upon the highways; * * *."

In Highland Farms Dairy, Inc., et al., v. Agnew et al., 300 U.S. 608, 57 S.Ct. 549, 553, 81 L.Ed. 835, it was stated: "The statute is not invalid for failing to prescribe the standards to be applied by the commission in granting licenses or refusing them."

In Lieberman v. Van De Carr (People of State of New York v. Van De Carr), 199 U.S. 552, 26 S.Ct. 144, 146, 50 L.Ed. 305, Lieberman's permit to sell milk in New York City had been revoked and he had been arrested and convicted of selling milk without a permit. He maintained that the law giving to the Board of Health the authority to issue permits for the sale of milk was unconstitutional and deprived him of his property without due process of law. The court held: "These cases leave in no doubt the proposition that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the state is not violative of rights secured by the 14th Amendment. There is no presumption that the power will be arbitrarily exercised, * * *."

In Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880, 884, it was held:

" * * * the Legislature had full power and legal authority to vest in the city the right to build, erect, construct, maintain, and operate toll bridges, and to make and fix the tolls upon the same. * * *

"Furthermore, this being a matter committed by the Legislature to the judgment of the municipal authorities, the municipal authorities have the right to fix the particular rates of toll for the use of the bridge erected by it, * * *."

In Masters et al. v. Duval County et al., 114 Fla. 205, 154 So. 172, 174, the court said: "In providing for public highways, statutes may authorize tollbridges to be constructed and maintained as a part of a highway system and may determine whether bridges shall be free or toll and

when tollbridges shall become free bridges, there being no organic regulation of the subject. * * * The matter is one of statutory policy, not of legislative power, when the subject regulated is not controlled by organic law."

In the case of United States v. Grimaud, Cal., 220 U.S. 506, 31 S.Ct. 480, 483, 55 L.Ed. 563, acts of Congress authorized the President to reserve public lands as forest reservations and provided for the management thereof by the Secretary of Agriculture, giving him power to make "such rules and regulations * * * as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C.A. § 551.

Regulations were made requiring all persons to pay for and secure grazing permits before grazing their stock within the reservation.

A demurrer was interposed on the ground that the act was unconstitutional in delegating a legislative power to the administrative officer.

The Supreme Court said that it was impracticable for Congress to provide general regulations, as each reservation had its peculiar and special features and that the authority given in this case was much less than that which had been granted to municipalities. The court further said that the powers so delegated were not of legislative character and "as an owner may delegate to his principal agent the right to employ subordinates, giving to them a limited discretion, so it would seem that Congress might rightfully intrust to the local legislature (authorities) the determination of minor matters."

From the above it seems well-established that Congress had the duty and the power to regulate the use of public highways in Alaska and that that power included the right to change a public road into a toll road. It further appears that the right of Congress just mentioned was not of a legislative character and that the same could be delegated to the Secretary of the Interior.

5. The complaint specifically alleges that the funds which were used for the maintenance and improvement of the Richardson Highway from 1906 to 1932 were those derived from occupational and license taxes, imposed by an act of Congress upon those engaged in business in the Territory of Alaska. It further alleges that from 1932 on some of the funds used for the improvement and maintenance of said highway were derived from said occupational and business license taxes, levied upon inhabitants of Alaska. The case of State of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927, is relied upon by the plaintiff.

In that case, as in this, the right of way over unreserved public lands of the United States was obtained by the public under Section 2477, R.S.U.S., and funds obtained from the general public were used in the maintenance, improvement, and making of the road. The use of each road as a free public road was later restricted by regulations of the Secretary of the Interior. In the Colorado v. Toll case, a reservation for the Rocky Mountain National Park was made of the ground over which the vested right of way in the public already existed. The Supreme Court held that the rights of the state of Colorado over the roads were left unaffected by the act creating the National Park and that therefore the regulations were beyond the power of the official.

In the present case, Congress stands in the same position towards the citizens of Alaska that the Legislature of the state of Colorado stood towards the citizens of Colorado with reference to the road in question. The result is that the case of Colorado v. Toll has no application to the principles controlling the present case.

6. It is alleged in the complaint that the Secretary of the Interior issued the regulations involved in this case capriciously and arbitrarily and that the tolls "were designed to annoy, harass, and penalize those transporting and shipping freight over the Richardson Highway from Valdez to Fairbanks, Alaska.

"That the Secretary of the Interior had no authority to promulgate said regulations as the tolls thereby collected are not necessary or advisable in the public interest, but on the contrary are very detrimental to the public interest in that the development of Alaska, for which the Richardson Highway was constructed, is being retarded due to the increase of freight rates on mining machinery, mining supplies, and other supplies and materials used by the mining industry and other industries engaged in the development of Alaska."

In Pacific States Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 162, 80 L.Ed. 138, 101 A.L.R. 853, the Oregon Code authorized the Chief of the Division of Plant Industry to fix official standards for containers of horticultural products. A type of container was prescribed for raspberries and strawberries packed for sale, and plaintiff, as a manufacturer of a different type, claimed that the order establishing the standard was arbitrary and capricious and took his property without due process of law.

The court said:

"With the wisdom of such a regulation we have, of course, no concern. We may inquire only whether it is arbitrary or capricious. * * *

"If any state of facts reasonably can be conceived that would sustain it [police power], there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge, or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. * * *

"The burden is not sustained by making allegations which are merely the general conclusions of law or fact. * * *

"Facts relied upon to rebut the presumption of constitutionality must be specifically set forth. * * *

"It is urged that this rebuttable presumption * * * attaches only to acts of Legislature; and that where the reg-

ulation is the act of an administrative body, no such presumption exists * * *. The contention is without support in authority or reason. * * *

"It is contended that the order is void because the administrative body made no special findings of fact. But the statute did not require special findings; * * *."

In the case of Perkins v. Lukens Steel Company et al., decided by the Supreme Court April 29, 1940, 310 U.S. 113, 60 S.Ct. 869, 875, 84 L.Ed. 1108, an act of Congress provided that sellers to the government must agree to pay their employees, producing the goods so sold, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed in similar work in the locality in which the supplies were manufactured or furnished.

Petitioners below maintained that the localities used by the Secretary of Labor were so large that their prevailing minimum wage established a standard too high to permit them to bid on government contracts. An injunction was asked against the respondents. The court said:

"It is by now clear that neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such. It is not enough that the Secretary of Labor is charged with an erroneous interpretation of the term 'locality' as an element in her wage determination. * * * Respondents, to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law. They claim a standing by asserting that they have particular rights under and even apart from statute to bid and negotiate for Government contracts free from compliance with the determination made by the Secretary of Labor for their industry. * * *

"Courts have never reviewed or supervised the administration of such an executive responsibility even where ex-

ecutive duties 'require an interpretation of the law.'
*   *   *

"In this legislation Congress did no more than instruct its agents who were selected and granted final authority to fix the terms and conditions under which the Government will permit goods to be sold to it. The Secretary of Labor is under a duty to observe those instructions just as a purchasing agent of a private corporation must observe those of his principal. In both instances prospective bidders for contracts derive no enforceable rights against the agent for an erroneous interpretation of the principal's authorization. For erroneous construction of his instructions, given for the sole benefit of the principal, the agent is responsible to his principal alone because his misconstruction violates no duty he owes to any but his principal. The Secretary's responsibility is to superior executive and legislative authority. Respondents have no standing in court to enforce that responsibility or to represent the public's interest in the Secretary's compliance with the Act. *   *   *

"The contested action of the restrained officials did not invade private rights in a manner amounting to a tortious violation. On the contrary, respondents in effect seek through judicial action to interfere with the manner in which the Government may dispatch its own internal affairs. *   *   *

"The case before us makes it fitting to remember that 'The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied, that such a power was never intended to be given to them.' "

In American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 57 S.Ct. 170, 174, 81 L.Ed. 142, the Communications Act of 1934, 47 U.S.C.A. § 151 et seq., was in question. It authorized the Commission, in its discretion, to prescribe forms of any and all accounts. The petitioner alleged that the prescribed forms of accounting

required the difference between the present cost and the original cost of property to be written off completely. The court said:

"If subdivision (C) had the meaning thus imputed to it, there would be force in the contention that the effect of the order is to distort in an arbitrary fashion the value of the assets. * * *

"This court is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action here involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse. What has been ordered must appear to be 'so entirely at odds with fundamental principles of correct accounting' * * * as to be the expression of a whim rather than an exercise of judgment.

In Utah Power & Light Company v. United States, 243 U.S. 389, page 410, 37 S.Ct. 387, 391, 61 L.Ed. 791, the court said: "That Congress intends there shall be some administrative regulations on the subject is plainly shown in the act, and that its discretion in the matter is not narrowly confined is shown by our decisions in United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563, and Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L. Ed. 570. If any of the regulations go beyond what Congress can authorize, or beyond what it has authorized, those regulations are void and may be disregarded; but not so of such as are thought merely to be illiberal, inequitable, or not conducive to the best results."

Keeping in mind the allegations of the complaint in this action and the matters which are of common knowledge or may be judicially noticed, there are a number of states of facts which can reasonably be conceived to sustain the imposition of a toll on the Richardson Highway. It is quite possible that the road bed of the highway and bridges are

of such a structure that the hauling of much freight over them would damage them to an extent that they would be of little use. It might easily be that the quantity of freight hauled over the highway, if no tolls were imposed, would be so great that it would bring into use large trucks which would greatly injure the road bed and bridges and be a menace and a danger to pleasure vehicles and smaller vehicles by reason of the narrowness of the highway in question.

Other possible states of facts could reasonably be conceived to sustain the imposition of the toll, but, inasmuch as one exists, the court is without authority to declare the toll regulation to have been made capriciously and arbitrarily.

7. From the above, the conclusion seems very clear that the matter of such tolls was within the power of Congress; that it delegated the same to the Secretary of the Interior under conditions which made the delegated duty an administrative rather than a legislative power; that the Secretary of the Interior did not act beyond the power delegated and that he did not act capriciously and arbitrarily.

The result is that no cause of action has been stated in the complaint, and, even if the Secretary of the Interior were a party hereto, a demurrer for failure to state a cause of action would have to be sustained.

The above makes it unnecessary to pass upon the other grounds of demurrer.

An order sustaining the demurrer will be entered.