A. B. DAY, individually and on behalf of all others similarly situated, etc., *Appellant,* v. CITY OF ST. AUGUSTINE, a municipal corporation created and existing under and by virtue of the laws of the State of Florida, *Appellee.*

139 So. 880.
Division B.
Opinion filed February 17, 1932.
Petition for rehearing denied February 29, 1932.

*Charles P. Cooper,* of Jacksonville, for Appellant;

*E. Noble Calhoun,* of St. Augustine, and *George C. Bedell,* of Jacksonville, for Appellee.

DAVIS, J.—In this case the legal point of conflict between the parties is whether or not the City of St. Augustine, Florida, has the right to maintain and operate a

certain toll bridge which has been constructed under legislative authority, across the Matanzas River.

At the time the suit was filed, the bridge in question was located entirely within the city limits and was being operated by the municipal authorities as a viatic way connecting the City of St. Augustine proper with Anastasia Island. Tolls for use of the bridge were being charged under purported authority of a municipal ordinance, and these tolls were being applied without discrimination as to liability or amount, to all who traveled over the bridge, whether residents of Anastasia Island or not.

The bridge forms a connecting link between the highways terminating in the City of St. Augustine and one of the principal State highways leading from Anastasia Island southward down the Atlantic Coast of Florida. To enjoy its facilities the same amount of toll is charged to citizens and tax payers of St. Augustine, as is charged to tourists and other travelers or transients passing through the city and using the bridge as a means of access to the coastal highway just mentioned.

The relief sought was by suit in equity for injunction against the city to prevent the collection of tolls from any or all persons using the bridge, whether citizens or tax payers, on the theory that the imposition of tolls is wholly unauthorized by any enforceable law giving the municipality such legal right. On final hearing the chancellor dismissed the bill on its merits, hence this appeal by the same party who was complainant in the Court below.

Complainant in the suit is a citizen and tax payer of St. Augustine. His right to maintain an equity cause seeking such broad and general injunctive relief, is asserted to rest on his interest as a municipal property owner and tax payer in having the bridge located en-

tirely in the city as it is, operated as a free bridge, inasmuch as it was constructed by a bond issue extending in liability over the city as a whole. It is contended that the bridge should be paid for as originally contemplated, by general taxation and not by tolls. It is also contended that complainant has a further interest in obtaining such relief as he seeks for himself, for a class of persons similarly situated, but who are too numerous to be made parties complainant in the present suit.

Sections 1038-1040 C. G. L., Chapter 8586, Acts of 1921, General Laws, confer jurisdiction on courts of equity in this State in all cases involving the legality of any tax, assessment or *toll* and provides that such courts shall have power to render decrees setting aside any such tax, assessment or toll as may be found to be invalid. The statute is in consonance with a constitutional provision on the same subject. Section 11, Article V, Const. 1885.

While no demurrer was filed to the bill, and voluminous testimony has been taken purporting to be relevant to the issues raised by the answer, to which many objections have been raised and argued, we regard one proposition of law as decisive of the major controversy.

May the Legislature constitutionally grant to a municipality in this State the right to construct and operate a toll bridge under legislative franchise, where the bridge connects two portions of the city which would otherwise be separated by a navigable river?

This Court takes judicial notice of the fact that the Matanzas River is a navigable body of water separating Anastasia Island from the main part of the City of St. Augustine; that by reason of such river persons residing on Anastasia Island would ordinarily only have access to the St. Augustine mainland by means of boats or other like conveyances; that a wide expanse of navigable water traversable only by a bridge lies between An-

astasia Island and the City of St. Augustine proper. The record shows in *addition* to this, that the island was formerly connected with the mainland by a toll bridge at first operated by private interests, and that the present municipal toll bridge has superseded the old wooden toll bridge which once existed in its stead.

On the west side of the river are situated all the principal stores, buildings, county and municipal offices, schools, churches, banks, hotels, places of amusement and other commercial activities of the city as well as the city's principal residence section, while on Anastasia Island, a large part of which has now been brought into the city limits of St. Augustine, is located a surburban residence and bathing beach section. By reason thereof those inhabitants of the city who live on the mainland are compelled to cross the bridge to reach the bathing facilities of Anastasia Island, while residents of Anastasia Island must cross the bridge to reach the principal or commercial portion of the city, including the public offices, banks, schools and churches with which they are concerned. It also connects the two State highways whose point of conjunction is within the corporate limits on the mainland.

The Matanzas River Highway Bridge involved in this case is therefore the principal passageway from one part of the City of St. Augustine to the other. There is no other practicable way for persons to cross (and it is impossible for vehicles or automobiles to cross) from St. Augustine proper to Anastasia Island, or vice versa, than by such bridge. In a broad sense this bridge may properly be considered as a part of the highways which it connects. Jacksonville v. Drew, 19 Fla. 106, 45 Am. Rep. 5.

It is settled law that the privilege of establishing a bridge over a navigable river and taking tolls for the use of the same is a *franchise,* the existence and disposal of

which is under the legislative department of the State, and that such franchise cannot be assumed or exercised without legislative authority. The grant of a franchise when made binds the public, and is directly or indirectly the act of the State. Notwithstanding the creation of municipalities the Legislature may still grant franchises to be exercised within their boundaries. 12 R. C. L. 182; Peoples R. R. Co. v. Memphis R. R. Co., 10 Wall. 38, 19 L. Ed. 844; Chenango Bridge Co. v. Page, 83 N. Y. 178, 38 Am. Rep. 407; Enfield Toll Bridge Co. v. Hartford R. R. Co., 17 Conn. 40, 42 Am. Dec. 716; Dyer v. Tuskaloosa Bridge Co., 2 Porter (Ala.) 296; 27 Am. Dec. 655; Grand Trunk Western R. Co. v. South Bend, 227 U. S. 544, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405. Under Section 8 of Article VIII of the Constitution there is nothing to forbid the Legislature making a municipal corporation created by it the grantee of a franchise to construct and operate a toll bridge, the principle being well settled that the Legislature of a State has almost absolute power with respect to the erection and regulation of toll bridges and may vest toll bridge companies, or other appropriate grantees, with that power. So. Ill. & M. Bridge Co. v. Stone, 174 Mo. 1, 73 S. W. 453, 63 L. R. A. 301.

In this case the City of St. Augustine contends that it derives its authority to collect tolls on "The Bridge of Lions" from Section 3 of Chapter 9912, Acts of 1923, Laws of Florida, which act includes in the powers granted to the City, provisions to the effect that the City might maintain and operate toll bridges and regulate the manner of using, and the rates to be charged, on any toll bridge. The city further contends that under Section 7 of Chapter 11148, Acts of 1925, all additional power required to enable it to prescribe and collect tolls on such bridges is placed within its jurisdiction.

Under the legislative acts above referred to, we are of the opinion that the sovereign lawmaking power of the State of Florida has the right to confer a reasonable legal grant of powers upon the City of St. Augustine for the carrying on and maintaining of its administrative functions; that the Legislature had full power and legal authority to vest in the City the right to build, erect, construct, maintain and operate toll bridges, and to make and fix the tolls upon the same; that it also had the right to regulate the right to use such toll bridges and the tolls and revenues derived therefrom, for any public municipal purposes. See State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692.

It appears therefore, that the City of St. Augustine having obtained from the Legislature sufficient authority to erect and maintain the toll bridge in question, and being empowered to prescribe the tolls to be charged therefor, and the use to be made of the revenues derived therefrom, was authorized to carry out the power which had been delegated to it, by adopting or promulgating an appropriate municipal ordinance fixing the rate of toll, and providing for the enforcement of its collection. Furthermore, this being a matter committed by the Legislature to the judgment of the municipal authorities, the municipal authorities have the right to fix the particular rates of toll for the use of the bridge erected by it, subject always to the generally recognized legal limitation that municipal ordinances, and especially those fixing rates of toll and other charges to be paid by the public, shall be reasonable.

Reasonableness in this connection has reference to the amount which may be reasonably charged for the privilege exercised in consideration of the toll paid. So long as the rate of exaction for toll does not exceed the reasonable value of the privilege of passage conferred

for the exaction made, the amount of such toll cannot be declared to be unreasonable as a matter of law.

Ordinarily the question of the reasonableness of rates of toll, and the like, is committed to administrative bodies, such as the Railroad Commission, there to be ascertained and determined after an investigation of the surrounding facts and arrived at according to specific regulations provided by law.

Authority to fix and regulate the tolls for traffic on toll bridges constructed or built, over or across, the Matanzas River seems to be conferred upon the Railroad Commissioners by Section 2748 C. G. L., 1697 R. G. S. Any abuse in the *amount* of toll which may be prescribed by the municipal authorities of the City of St. Augustine under its charter may therefore be redressible by an appeal to the Railroad Commission under the Section of the statutes just above cited.

The fact that the gross or net revenues of the tolls now being charged result or will likely result, in substantial surpluses above the debt requirements and operating expenses of the bridge, is to be considered in determining reasonableness, but is by no means conclusive that the tolls charged which produce such surpluses are unreasonable *per se*.

It follows from what has been said that if the erection and maintenance of toll bridges is a public franchise of the *State* which the Legislature may constitutionally grant to a municipality, as well as to a private corporation or individual, as we have seen may be done, the argument that the City of St. Augustine has no right to charge citizens and tax payers of the City for passage from one part of it to the other over the bridge cannot be sustained.

In its very nature a franchise is such a privilege that the general public has no inherent right to unconditionally enjoy it. Being a legislative prerogative, the Leg-

islature may grant it to whomsoever it will, and may attach to the grant any conditions which it may see fit. See Leonard v. Baylen St. Wharf Co., 59 Fla. 547, 52 Sou. Rep. 718, 31 L. R. A. (N. S.) 636. Whatever separation of access from Anastasia Island to the mainland exists, is by reason of the act of nature in so shaping the topography in that locality, as to bring about the island separated from the mainland by a wide expanse of navigable water.

The right to use a special facility such as a bridge constructed across that water, is not such an inherent right in the public that either citizens or tax payers must be permitted to use that facility free instead of being compelled to pay toll for it. On the other hand, the right to travel the public highways (when not exercised as a means of conducting a private business thereon) is subject only to the police power and the power of taxation, an inherent right which, in its very essence, is quite different from the use of a special facility such as a bridge.

We may therefore grant the appellant's argument that a city would have no right to erect toll gates along its streets as a means of raising revenue from citizens, tax payers and others who travel thereon, but such principle, if conceded, would not necessarily apply to special facilities, the construction and operation of which are inherently the subject of franchises, and not such a right in common as the right of free travel on a city street.

In this case the Legislature might have granted the franchise in question to a private corporation but did not do so, although that has been done in this and many other States in particular instances. The fact that it elected to grant this franchise with equal or corresponding privileges to a municipal corporation instead of a private one, does not detract from the power of the Legislature in the premises, nor deny to the municipal

grantee of the franchise whatever legal rights may have accrued to it out of the legislative grant as made.

The mere fact that the city has been authorized to use and has used its credit and the pledge of its taxing power, to secure the funds with which to pay for the erection of the bridge in the first instance can confer no legal right to the free use of this facility upon either the citizens or tax payers of St. Augustine, nor upon the traveling public generally. Free use of a facility created under a franchise is such a privilege as the Legislature may grant or deny at its will where contract rights are not violated nor equal protection of the laws denied. Merely because municipal credit was obligated, and the municipal taxing power was pledged, by way of guaranty that the municipal bonds issued would be paid, gives rise to no vested right on the part of the tax payer to see that the originally contemplated method of paying for the toll bridge is continued, after the power of the Legislature has been exercised to authorize or set up a different or substituted method of payment. Such questions as this are controlled by the character and extent of the *exercise* of legislative power, which may be shown,—not by a limitation or denial of the power in the Legislature to legislate on the subject.

When municipal bonds are authorized by appropriate legislative act and a particular means is provided or authorized to pay them, the right to change such means of payment and provide a different mode, is necessarily within the legislative *power* at all times, subject only to the constitutional inhibition against impairment of the obligation of contracts by changing the means of payment first provided for without furnishing an adequate substitute. The cited case of City of St. Cloud vs. Carlton, 78 Fla. 131, 82 Sou. Rep. 617, contains nothing which holds to the contrary.

A toll is a demand quite different from a special assessment imposed for benefits. The latter is in the nature of a *tax*, and is often called a *tax*. A toll on the other hand, has been defined as a common charge which it is the prerogative of sovereignty alone to impose and regulate and which cannot be exercised at all without a *franchise* from the State. Forbes Pioneer Boat Line v. Everglades Drainage District, 77 Fla. 742, 83 Sou. Rep. 346. A *franchise* to impose and collect tolls can be delegated by the Legislature to private corporations or individuals, while the power to make special assessments, or to levy taxes in the nature of special assessments, can only be exercised by a governmental agency under authority of law. Again, the imposition of a defectively authorized special assessment can be ratified and made retroactively legal, by the passage of a subsequent legislative validating Act, but tolls cannot be. See Forbes Pioneer Boat Line v. Comm'rs Everglades Drainage District, 258 U. S. 338, 42 Sup. Ct. 325, 66 L. ed. 647.

It will thus be seen, that there are so many points of difference between tolls and special assessments that the right to exact the one cannot be gauged by the power to levy or assess the other. Tolls arise from proprietorship, while special assessments are charges of government. Hiers v. Mitchell, 95 Fla. 345, 116 Sou. Rep. 81; Virginia Canon Toll Road Co. v. People, 22 Colo. 429, 45 Pac. 398, 37 L. R. A. 711; State ex rel. Hines, v. Scott County Macadamized Road Co., 207 Mo. 54, 105 S. W. 752, 13 Ann. Cas. 656.

Our conclusion makes unnecessary the consideration of the weight of the evidence, or the challenged rulings on the admission and rejection of testimony.

Reduced to a simple statement, we hold that the State has power to grant franchises to erect and maintain toll bridges; that it may do so as to such bridges as may be

required within the limits of incorporated towns; that in such case it may make the grantee of a toll bridge franchise the municipal corporation itself; that the collection of tolls is an act of the State in its proprietary capacity and that it may delegate such right to the franchise holder subject always to control and regulation by the Legislature of the toll collecting power; that being an attribute of proprietorship in the sovereign, the State may dispose of a toll bridge franchise where it will; that it may so dispose of it as to enable it to be enjoyed and exercised by a municipal corporation to raise revenue for any proper municipal purpose, including the payment of debts incurred by the municipality in providing a special facility necessary to make the collection of the toll a possibility; and that while toll bridges erected by municipal authorities under a state franchise constitute a part of the public highway they may connect, they are such only to the extent that no discrimination as to their use is permitted to be made.

So holding, we must affirm the decree dismissing appellant's bill to enjoin collection of the tolls complained of in the present suit.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.