WILBUR W. MASTERS and A. W. WILLIAMS v. DUVAL COUNTY, et al.

154 So. 172.

Opinion Filed March 7, 1934.

206

*P. H. Odom* and *MacWilliams & Upchurch,* for Appellants;

*Julian E. Fant, P. L. Gaskins* and *Robert R. Milam,* for Appellees.

WHITFIELD, J.—This appeal is from an order denying temporary injunctions and dismissing the bill of complaint, upon allegations held insufficient to support prayers (1) to enjoin the holding of an election under Chapter 16402, Acts of 1933, and (2) to enjoin the collection and use of tolls for passage over the St. Johns River Bridge in the City of Jacksonville except tolls that may be required for the operation, maintenance and repair of the bridge and for

paying the balance due for construction of the bridge, which was erected by the county as a toll bridge under Chapter 7462, Acts of 1917, and Chapter 8672, Acts of 1931.

Chapter 7462, Acts of 1917, authorized the County Commissioners, upon approval of a majority of the qualified voters of the county to issue bonds and to construct with the proceeds thereof a toll bridge over the St. Johns River and the proper approaches thereto, the tolls collected to be used (1) in the operation, maintenance and repair of said bridge and the approaches thereto; (2) in the payment of the interest on said bonds; (3) in providing a sinking fund for said bonds. State, *ex rel.* Young, *et al.*, v. Duval County, 76 Fla. 180, 79 So. 692. Chapter 7462 does not prevent further enactments regulating tolls for passage over the bridge or for the collection and disposition of tolls after the construction of the bridge is paid for by paying the construction bonds.

Chapter 8672, Acts of 1921, authorized Duval County to issue additional bonds to complete the construction of the bridge. It appears that the bridge construction bonds have been paid except a relatively small part thereof and that though large sums have by statutory authority been used in retiring other bonds of the county, there is still more than enough in the sinking fund to pay the remaining outstanding bridge construction bonds. See Chapter 15188, Acts of 1931; State, *ex rel.* v. Duval County, 105 Fla. 174, 141 So. 173; *In re:* Tolls on St. Johns River Bridge, 108 Fla. 172, 146 So. 99.

It is alleged that under Chapter 7462 and 8672, Laws of Florida, $1,200,000.00 of bridge construction bonds were issued; and that from toll receipts since the bridge was first used, July 1, 1921, all such bonds except $90,000.000 have been paid, $318,000.00 have been paid to the State Board of Administration to provide a sinking fund for

county bonds, $333,000.00 have been used to purchase other county bonds pursuant to Chapter 16400, and $155,250.00 with the January, 1934, tolls amounting to $25,000.00 are available to retire the $90,000.00 of the outstanding bridge construction bonds.

Chapter 16400 provides for a continuation of the collection of tolls on the St. Johns River Bridge, such tolls to be used (1) for the operation, maintenance and repair of the bridge; (2) for paying the balance of the outstanding bonds issued for the construction of the bridge; (3) for the purchase, cancellation and retirement of any bonds of the County of Duval.

Chapter 16402 in terms extends the franchise of the Florida Ferry Company, a Florida corporation, to include authority to construct, maintain and operate a toll bridge and approaches thereto, across the St. Johns River at Jacksonville, Florida, at or near the foot of Main Street, said to be within one-half mile of the St. Johns River Bridge. The statute confers the franchises and privileges stated therein upon the Florida Ferry Company subject to an approving election by the freeholder qualified electors of Duval County.

The assignments of error are (1) refusing temporary injunction, (2) dismissing the bill of complaint, (3) holding that Chapter 16400 does not violate the commerce clause and the Fourteenth Amendment of the Federal Constitution, (4) holding that Chapter 16402 does not violate the commerce clause and the Fourteenth Amendment of the Federal Constitution.

Questions to be determined are whether. Chapter 16400 violates organic or other dominant law in authorizing Duval County to continue the collection of tolls for passage over the St. Johns River Bridge, except to pay for operating, maintenance and repair of the bridge, after payment of all

the bridge construction bonds have been provided for by toll collections, and whether such tolls may legally be used to retire other outstanding bonds of the county.

It is in effect argued that the bridge tolls collected under the statute, after the bridge is paid for by tolls, are taxes, and as such are not authorized by the State Constitution; and that a county cannot operate a toll bridge as a public utility, at least after the bridge has been paid for by tolls collected for passage over the bridge.

Tolls collected by statutory authority for passage on foot or in vehicles over a bridge constructed to afford a passage way over a river are not taxes within the meaning of Article IX of the Florida Constitution. Bridge tolls are collected from everyone who uses the bridge as a passage way whether a resident or a non-resident of the taxing unit, State, county or municipality, wherein the bridge is located, while taxes may be levied upon residents or upon property having its situs in the taxing unit, State, county or municipality. The Constitution recognizes the distinction between a "tax, assessment or toll." Sec. 11, Art. V. Tolls are not taxes. See Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880; Sands v. Manistee River Improvement Co., 123 U. S. 288, 8 Sup. Ct. 113, 31 L. Ed. 149; Ruler v. York County, *et al.,* 290 Pa. 427, 139 Atl. 136. Tolls in this case are collected for passage over a bridge, which is a special facility furnished by the county under statutory authority. Counties are subdivisions of the State and they may exercise such powers and privileges as may be prescribed by statutes which are not in conflict with organic law. See Sections 1 and 2, Article VIII, and Section 24, Article III, Constitution.

The power of the Legislature to authorize the collection of tolls is expressly recognized by the provision of the Constitution which gives to the Circuit Courts exclusive origi-

nal jurisdiction of cases "involving the legality of any tax, assessment or toll." Section 11, Article V.

There is no express or implied provision of organic law which forbids a statute to authorize a county to construct, maintain and operate a toll bridge and to collect reasonable, non-discriminatory tolls for passage over a bridge; State, *ex rel.* Young, *et al.,* v. Duval County, 76 Fla. 180, 79 So. 692; and to use the tolls collected for any duly authorized county purpose, even though tolls already collected be sufficient to pay for the construction of the bridge. State, *ex rel.* Landis, *et al.,* v. Duval Co. Fla., 105 Fla. 174, 141 So. 173; *In re:* Tolls on St. Johns River Bridge, 108 Fla. 172, 146 So. 99. In providing for public highways, statutes may authorize toll bridges to be constructed and maintained as a part of a highway system and may determine whether bridges shall be free or toll and when toll bridges shall become free bridges, there being no organic regulation of the subject. Day v. City of St. Augustine, 104 Fla. 251, 139 So. 880. The matter is one of statutory policy, not of legislative power, when the subject regulated is not controlled by organic law. If the toll bridge franchise granted to the county by Chapter 7462 has expired, it has been renewed by Chapter 16400.

If, as seems to be conceded, a statute may authorize a county to erect a bridge over a navigable river and to charge tolls for its use until it is paid for, there is nothing in the Constitution which forbids a statute authorizing the collection of tolls for passage over the bridge after it is paid for, and the use of the proceeds for county purposes. State, *ex rel.* Landis, *et al.,* v. Duval County, Fla. 105 Fla. 174, 141 So. 173. The bridge being the property of the county, it may be used for county purposes authorized by statute and such use does not convert the tolls into taxes.

The Constitution does not forbid to the counties other sources of revenue than taxation.

"Tolls collected from operation of toll bridges on highways are not 'taxes,' though tolls collected may be used in relief of taxation." Ruler v. York County, 290 Pa. 427, 139 Atl. 136.

Whether the St. Johns River Bridge is a free or a toll bridge is determined by the statutes which expressly make it a toll bridge.

The evolution by continued use and gradual improvement from an Indian trail or a cow path to a public highway, or the construction of a highway for common use, and the rights of the general public as to passage over such highways, have relation in general to roads requiring no special facilities differing from the requirements of a roadway on the ground, and may not include special facilities such as a bridge over a navigable river to connect with highways on each side of the river constructed by authority of law at great public or private expense, for the use of which bridge as a passageway statutory is given to collect a reasonable and uniform toll. Passage over the roads as constructed on the ground and over the river by means other than a legal toll bridge, may be, free to all the public, while the duly authorized toll bridge, a special facility, may be used by all the public alike upon payment of the required uniform and reasonable toll. See Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880.

The cardinal rule is that public highways, including bridges as a part of highways, are open to all alike, either free to all, or the toll, if any be legally authorized for passage over the road or the bridge, must be the same to all under like conditions.

The mere fact that interstate or intercounty or intercity travelers must pay a uniform bridge toll does not make

the toll illegal, since the toll is not a tax upon the traveler as in Crandall v. Nevada, 6 Wallace (U. S.) 35, 18 L. Ed. 745, or upon freight as in State Freight Tax, 15 Wallace (U. S.) 232, 21 L. Ed. 146. Nor is it like a tax upon the filing of suits in court as in Flood v. State, 95 Fla. 1003, 117 So. 385. It is a toll for the use of a special facility authorized by law and furnished at great expense for passage over what would otherwise be an obstruction to continuous convenient travel. See Hendrick v. Maryland, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385; Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880. No restrictions upon the use of the bridge are imposed as was done as to roads in Bush Co. v. Maloy, 267 U. S. 317, 45 Sup. Ct. 326, 327, 69 L. Ed. 627, and other somewhat similar cases. In Covington & Cincinnati Bridge Co. v. Com. of Ky., 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962, and other similar cases the controversy was as to State regulations of interstate commerce. The toll bridge in this case does not directly or materially affect interstate commerce.

Of course the State or county or city may be authorized by law to construct and maintain free bridges, but this does not affect the power to establish and maintain toll bridges when duly conferred by statute for a proper purpose. And the power of the Legislature to authorize tolls to be charged may exist even though the bridge has been paid for by tolls or otherwise. State, *ex rel.* v. Duval Co. Fla., 105 Fla. 174, 141 So. 173; and the tolls may be used for any statutory purpose not forbidden by organic law. The Constitution does not *require* the expenses of State, county or municipal government to be paid only by *ad valorem* or other taxes. The counties may by statute be authorized to own property including facilities and to make reasonable, appropriate charges for the use of such property or facilities where it is for a county purpose. The

county owns and operates the toll bridge in this case by virtue of statutory authority.

Equal and uniform tolls charged to everyone on like terms and conditions for the use of a special facility such as a highway bridge over a navigable river, does not deny to anyone the "equal civil and political rights" that are guaranteed by the Preamble to the State Constitution. See Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880. The *free* use of a special facility is not one of the civil and political rights referred to in the Constitution. Nor do such tolls violate the Fourteenth Amendment of the Federal Constitution. See Lawless v. Duval County, Fed. 2nd, filed Feb. 16, 1934. There is compensation for, and no unjust discrimination in, the tolls collected for passage over the bridge, a special facility afforded in this case. There is no suggestion that the prescribed tolls are not entirely just and reasonable.

If residents of the county on one side of the river have occasion to use the bridge more than do those on the other side, the tolls are not thereby rendered invalid even if an advantage thereby results to those on one side of the river. See Day v. City of St. Augustine, 104 Fla. 261, 139 So 880. That consideration goes to the policy and not to the power of the Legislature. All who pass over the bridge pay a uniform toll applicable to all under like conditions.

Even if there are other draw bridges over navigable streams owned and operated by the county, for the passage over which no toll or other charge is made, that does not render the authorized collection of reasonable and uniform tolls for passage over the St. Johns River Bridge in the county illegal because it is an arbitrary classification of subjects for imposing tolls, since the bridge here considered may be very much more expensive in construction and maintenance, and its operation over a great river in a

large commercial city may require special attention and care in the public interest, even if statutes may not determine which special bridge facilities furnished to the traveling public by a county may be free and which may be charged for when not limited by organic law and no arbitrary discrimination appears oppressively affecting fundamental rights. For each toll bridge there must be a franchise granted by the State, and the State may determine the number and location of toll bridges to be authorized.

As the tolls collected for passage over a highway bridge belonging to the county are not taxes, the organic provision forbidding special or local laws for assessment and collection of taxes for State and county purposes, is not applicable. Nor does the statute on the facts shown by the record in this case, violate Section 7 of Article IX of the Constitution forbidding the levy of a tax for the benefit of any chartered company.

The St. Johns River Bridge was not constructed or reconstructed under any Federal law or by the aid of any Federal appropriation, and it is not used or regulated by the Federal government, so the Federal statute forbidding tolls is not applicable. As the bridge is a special facility afforded by the county in aid of travel over a highway, a legal and proper toll for passage over the bridge does not unlawfully burden interstate commerce.

Chapter 16402 does not violate Section 25 of Article III as amended in 1900, which forbids special laws "incorporating * * * useful companies or associations," since Chapter 16402 does not incorporate any company or association, though it does grant franchises. The company to exercise the franchises and privileges referred to in the Act has been incorporated under the general laws of the State with the contemplated powers; and the Constitution does not

forbid special laws granting permissible franchises and privileges to corporations.

The statute does not regulate the jurisdiction and duties of any class of officers except as an incident to the main purpose of the Act, which is to grant franchises to the Florida Ferry Company. Nor does the statute provide for "opening and conducting elections for State and county officers" in violation of Section 20, Article III, Constitution.

Should the provisions of Section 6, Chapter 16402, relative to minimum tolls, be invoked and so applied as to violate public or other rights, Section 30, Article XVI, of the Constitution or other controlling provisions or principles of the Constitution and laws afford appropriate remedies to redress wrongs. See Tampa Water Works Company v. Tampa, 199 U. S. 241, 26 Sup. Ct. 23, 59 L. Ed. 171.

The Legislature has inherent power to prescribe and regulate directly or through appropriate tribunals, tolls or other rates for public facilities. See Railroad Commrs. v. P. & A. R. R. Co., 24 Fla. 417, 5 So. 129, 12 Am. St. Rep. 220; 2 L. R. A. 504.

The tolls prescribed by the statute are not taxes within the meaning of the Section 5, Article IX, of the Constitution which requires the Legislature to *authorize the several counties to assess and impose taxes* for county purposes.

Statutory referendum elections are not elections under the Constitution of the State within the meaning of Section 1, Article VI, as amended in 1894, relating to the qualification of electors in "all elections under this Constitution." The organic law requires county, district and municipal bond issues to be approved by a majority of the qualified freeholder electors. Section 6, Article IX, of the Constitution as amended in 1930; page 784, Acts of 1929. See

also Section 17, Article XII, as amended in 1924, Acts 1923, page 484. No elector or other person has an inherent or organic right to vote in statutory referendum elections. Chapter 16402 provides that the franchise granted by the Act to the Florida Ferry Company shall be submitted to a referendum election at which "all freeholders qualified to vote in the general election in Duval County next preceding such called election shall be qualified to vote in said referendum." Such enactment violates no provision of the Constitution, and is not an arbitrary classification of persons permitted to vote on the subject. The Legislature may make an enactment become effective upon a contingency, and the contingency and classification determined by the statute in this case are not shown to violate any provision or principle of organic or other dominant law, State or Federal. The statute expressly provides that "all freeholders qualified to vote" in the preceding general election in the county may vote in the referendum election. This classification is reasonable under the Constitution and laws of Florida with reference to the subject of the statutory provisions submitted for approval or disapproval. See Sec. 2, Art. VI, Constitution.

Affirmed.

DAVIS, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.