## School Borrowing

721

HARRINGTON ADAMS, Deputy Attorney General, and THOMAS D. McBRIDE, Attorney General, May 15, 1958. —You have asked to be advised with regard to the approval of the proceedings involved in the borrowing of money by a school district through a bond issue. This duty is imposed upon your department by the Municipal Borrowing Law of June 25, 1941, P. L. 159, 53 PS §§6101 to 6703. More specifically, section 302 of said act, 53 PS §6302, provides that you shall ascertain whether the proposed debt is within the limitations imposed by the Constitution and whether such proceedings are in conformity with existing laws. You present the following facts:

The floating debt of the school district for operating expenses incurred prior to July 1, 1957, was $70,600. The school district was obligated to make a rental payment by reason of a lease with the State Public School Building Authority, and you ask whether the balance due on the rental under the lease agreement should be treated as a debt. The lease was entered into in 1954 and calls for annual payments until 1995.

The election notice required by section 205 of the Municipal Borrowing Law, supra, 53 PS §6205, was published in a newspaper in the school district giving the amount of the bonded indebtedness to be incurred, the amount of the assessed valuation and the present

indebtedness of the school district as "No Dollars". The election notice also set forth that the purpose of incurring said indebtedness was to fund the temporary indebtedness of the school district in a certain amount and to issue bonds necessary for the current obligations of the school dstrict. The statement that there was *"no indebtedness"* was, of course, incorrect; the intention, we presume, was to state that there was *no bonded indebtedness.* In other respects the notice was accurate. You ask whether the notice was in substantial compliance with section 205(*b*) of the Municipal Borrowing Law, supra, 53 PS §6205, which section sets forth in detail the information to be published in the notice.

You call attention to the question which appeared upon the voting machine when the matter of the approval or disapproval of the indebtedness was submitted to the electorate. This read as follows:

"SHALL bonded indebtedness of the School District of . . . Pennsylvania, be incurred in the amount of Eighty-four thousand dollars ($84,000) for the purpose of funding temporary indebtedness in the amount of Seventy-six thousand dollars ($76,000) and for the furnishing of funds necessary for the current obligations of the School District?"

You ask whether this question was sufficiently clear to the electors to enable them to vote on the question.

We shall first discuss the question as to whether or not the rental payment or the balance under the lease with the State Public School Building Authority is a debt in the constitutional and legislative sense.

"Debt" is defined in section 102(*f*) of the Municipal Borrowing Law, supra, 53 PS §6102(*f*), as:

" 'Debt', all general obligations of the municipality to pay money either in the present or future, except obligations payable from current revenues, lease agree-

ments not directly or indirectly involving the acquisition of capital assets and contracts for service. A debt evidenced by general obligation bonds shall be deemed to have been incurred by a municipality at the time when the ordinance authorizing such bonds shall become effective."

In the case of Greenhalgh v. Woolworth, 361 Pa. 543, 64 A. 2d 659 (1949), it was held that a contract to lease and the lease provided for under the State Public School Building Authority Act of July 5, 1947, P. L. 1217, 24 PS §§791.1 to 791.16, do not enable the school district to acquire a capital asset in violation of constitutional inhibitions. At page 552, the court said that a self-liquidating project may be defined as one wherein the revenues received are sufficient to pay the bonded debt and interest charges over a period of time and that a school building project under the instant Authority Act is self-liquidating if the annual rentals for the building, payable by the school district from current revenues, are sufficient to discharge, over the period of years fixed by the lease, all debt service and the entire debt incurred by the lessor in the construction of the project. At page 556, the court said that an outstanding factor is the immunity of the school district's property and the inability of creditors to compel payments beyond the sums available for current revenues. Current revenues of the school district appear to be ample to bring the instant case within the definition promulgated by the Supreme Court.

Furthermore, it has been held that the funding or refunding of a debt previously created and existing is not an increase of that indebtedness but is merely a continuation thereof. See Schuldice v. City of Pittsburgh, 251 Pa. 28, 95 Atl. 938 (1915).

In Halpin v. Rochester Borough, 281 Pa. 109, 126 Atl. 241 (1924), the court said, at page 113:

"The mere fact that the bonds are to be used for the retiring of floating indebtedness is no reason for inhibiting the new issue, and this has been held, though the authorizing ordinance makes no provision for the cancellation simultaneously with the sale of the new securities: . . ."

We, therefore, are of the opinion that the rental payment and the balance due under the lease with the State Public School Building Authority are not such debts as are prohibited by the Constitution or by law.*

With regard to the question of the election notice and its reference to "No Dollars", it is to be noted that the notice contained the following sentence:

". . . The purpose of incurring said indebtedness is to fund the temporary indebtedness of the School District in the amount of $76,000 . . ."

Any confusion or misunderstanding caused by the statement of "No Dollars", we feel was offset and clarified by the above quoted statement and the fact that later on in the notice it again referred to the bonded indebtedness being incurred.

In the case of Ruler v. York County, 290 Pa. 427, 139 Atl. 136 (1927), the Supreme Court said, at pages 433-434:

". . . our conclusion is that it is now too late to raise the contention that the voters were misled. No one can know that they were and there is now no way to establish that proposition. We have held in the broader field of constitutional amendment that after a vote has been taken on the adoption of an amendment it is too late to raise questions as to the validity of the submission . . . *and we now decide that questions such as that*

---

* The cases cited in Official Opinion No. 109, Withholding State Funds, 14 D. & C. 2d 407, are distinguishable. See Graham v. Philadelphia, 334 Pa. 513, 6 A. 2d 78 (1939), at page 524; Kelley v. Earle, 325 Pa. 337, 190 Atl. 140 (1937).

*before us, which go to the preliminaries of a popular submission on a question of increase of municipal indebtedness must be raised before the vote takes place.* If not raised until afterwards, our conclusion must be, as it is on the record before us, that the action of the electorate was intelligently taken, with full notice and knowledge of the resulting burdens assumed, and if in the question voted upon there was sufficient and proper indication of the main purpose intended, as there is in the instant case, effect is to be given to the voter's approval." (Italics supplied.)

We, therefore, are of the opinion that the reference to "No Dollars" in the election notice is an error which cannot adversely affect the legality of the notice or the bond issue at this time.

Turning now to the question as it appeared upon the voting machine wherein it referred to the indebtedness of $76,000, when as a matter of fact it was $70,600. In our opinion, this error comes within the principles enunciated and quoted in Ruler v. York County, supra, and cannot form the basis for disapproving the bond issue.

By way of summation, we are of the opinion and you are accordingly advised that:

(1) The payments due under the lease agreement by the township school district do not violate the constitutional and statutory provisions with regard to the creation of debts.

(2) The reference to "No Dollars" in the election notice cannot adversely affect the legality of the notice or the bond issue at this time.

(3) The question as it was presented on the voting machine was sufficiently clear to enable the electors to vote on the question, and, therefore, the matters to which you have called our attention do not constitute a legal basis for the disapproval of the bond issue.