QUESTION: Does the exemption from the payment of tolls on bridges and ferries granted by s. 347.19(2), F.S., apply to vehicles driven by clergymen and preachers as well as to the clergymen and preachers themselves?
SUMMARY: The exemption from the payment of tolls on bridges and ferries granted by s. 347.19(2), F.S., applies to vehicles driven by clergymen and preachers of the gospel across the bridge or onto the ferry as well as to the clergymen and preachers themselves when traveling alone. If nonmembers of the clergy are passengers, the toll should be paid for such passengers or for the vehicle. Enclosed with your request are copies of letters written by the general counsel and other members of the staff of the Department of Transportation indicating that the department has interpreted the statute in question as authorizing the exemption of clergymen and preachers of the gospel only from a bridge or ferry toll that is personal in nature, such as a pedestrian or a "per capita" charge on persons within vehicles, and not from a bridge or ferry toll that is a charge against the vehicle. The letter from the general counsel indicates that this policy has been in effect for some 20 years, based on an informal letter opinion dated April 25, 1955, from the then Attorney General Richard W. Ervin to the resident attorney of the State Road Department, and on the fact that s. 347.19(1), F.S., specifically exempts the vehicles of the military forces of the state. It is stated also that, unless the Attorney General renders a formal opinion "specifically directing itself to the points relied upon by my predecessors or a judicial decision," the departmental policy in this respect could not be changed. In response to this implicit invitation, I have examined the 1955 letter opinion as well as the provision of the statute relating to the exemption of military personnel. The 1955 informal opinion was not concerned with the question here presented; it dealt with the meaning of the words "clergymen and ministers of the gospel" under s. 347.19(2), supra. It was said therein: The statute by its terms confines the exemption to clergymen and preachers of the gospel. It is a personal exemption and is confined to the members of the class named by reason of the nature of their calling. The lexiconological [sic] definition of "clergyman" is "a member of the clergy; an ordained minister; a man regularly authorized to preach the gospel and administer its ordinances; one in holy orders." The privilege granted has no relation to the nature of the services in which an individual is engaged, whether for charitable or missionary purposes. It is restricted to persons qualified and regularly authorized to preach the gospel and administer its ordinances, and who [are] engaged in that calling. It can thus be seen that the description of the exemption as "personal" was intended only to characterize it as attaching to and restricted to an individual by reason of his calling as an ordained minister or regularly authorized preacher of the gospel and not because of the nature of the services in which an individual may be engaged — whether for charitable or missionary purposes. (Cf. AGO 073-469, holding that for the purpose of s. 347.19(2), F.S., "clergymen and preachers of the gospel" are those persons "selected by their religious society in accordance with the organization's practices to stand as a spiritual representative of the organization.") And I can find nothing in the 1955 informal opinion that stands for the proposition that a clergyman or preacher of the gospel is entitled to be exempt only from a "pedestrian" or a "per capita" charge on persons within vehicles, as indicated in the correspondence referred to above. It should be noted also that the 1955 letter opinion incorrectly referred to a bridge or ferry toll as "in the nature of a tax." See Day v. City of St. Augustine, 139 So. 880,885 (Fla. 1932), in which the court, in discussing the distinction between a bridge toll and a tax, said: A toll is a demand quite different from a special assessment imposed for benefits. The latter is in the nature of a tax, and is often called a tax. A toll, on the other hand, has been defined as a common charge which it is the prerogative of sovereignty alone to impose and regulate and which cannot be exercised at all without a franchise from the state. Accord: Masters v. Duval County, 154 So. 172, 175 (Fla. 1934), stating that a bridge toll is not a tax on the traveler or on freight, but an authorized charge for the use of a special facility "furnished at great expense for passage over what would otherwise be an obstruction to convenient continuous travel." The early statutes authorizing the then Railroad Commission to fix and regulate the tolls over certain toll bridges and causeways (Ch. 5423, 1905, Laws of Florida, and Ch. 7321, 1917, Laws of Florida) prescribed the maximum "rates, charges or tolls" that could be prescribed by the commission. See ss. 2744 and 2745, C.G.L. 1927, specifying a maximum of 10 cents for foot passengers and bicycles ridden by one person; 25 cents for motorcycles ridden by one person (10 cents for each additional passenger); 25 cents for horse and rider; 50 cents for a single team and driver (10 cents for each additional passenger); and 75 cents for automobile and driver (10 cents for each additional passenger). The statute exempting clergymen and preachers from the payment of bridge and ferry tolls was adopted over 130 years ago. See the Act of March 5, 1842, ss. 27 and 28, exempting the "state militia" from paying tolls on bridges and ferries in this state and providing that "[c]lergymen and preachers of the gospel shall likewise be exempt from paying toll at state bridges and ferries." As carried forward as subsection 347.19(2) in the first codification of Florida laws — Florida Statutes 1941 — the language of the statute was changed to read: Clergymen and preachers of the gospel shall be allowed to pass free over all toll bridges and ferries in this state. (Emphasis supplied.) In any event, since 1842, s. 347.19(2) has exempted clergymen and preachers of the gospel from bridge and ferry tolls and allowed them to "pass free" over toll bridges and ferries. The ministers known as "circuit riders" who traveled many miles to provide spiritual comfort and guidance to Florida residents in the early years of Florida's history traveled on horseback or in a horse-drawn vehicle. And the exemption from paying toll or the right to pass free over toll bridges and ferries provided by the 1842 law and 1941 Florida Statutes, quoted above, must have been intended to authorize free passage to the clergyman, whether he was a "foot passenger," a rider on horseback, or in a buggy, and necessarily included the vehicle which he was driving. Otherwise, the exemption was for all practical purposes a nullity; and it must be assumed that the Legislature intended a legislative act to serve some useful purpose. Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968). The change from a per capita charge (if that is the proper designation of the maximum tolls authorized by the 1905 and 1917 acts referred to above) on a foot passenger, a horse and rider, or a oneor two-horse buggy and its driver, plus 10 cents for each additional passenger, to a charge on the vehicle without regard to the number of passengers therein, is not inconsistent with a legislative intent that a clergyman should pass free over toll bridges and ferries when driving alone in a car or riding a horse, bicycle or motorcycle. If there are nonmembers of the clergy in the vehicle, then they should be required to pay whatever charge is made for the use of the toll bridge or ferry, as the "personal" exemption extended to the clergyman may not be extended to include his nonclergy passengers. However, it seems clear that s. 347.19(2) was intended to authorize free passage of a clergyman without regard to the mode of conveyance he is using — whether "shank's mare," horse, bicycle, motorcycle, or motor vehicle — over a toll bridge or ferry, when he is traveling alone (or with other members of the clergy). The fact that the 1931 act relating to the reorganization of the state militia, Ch. 14761, 1931, Laws of Florida, contained a provision specifically authorizing military vehicles, as well as military personnel, to "pass free through all toll gates and over all toll bridges and ferries in this state" does not, in my opinion, require a different conclusion. The particular provision of the 1931 act so providing was carried forward into the 1941 Florida Statutes as subsection (1) of s. 347.19, supra; and the provision of the 1842 act exempting from bridge and ferry tolls "the militia of the State when actually going or returning from musters, or other militia services" was deleted. [The change in the 1842 act made by the 1941 Florida Statutes (changing the "exemption" from tolls to read "pass free") in incorporating this provision into the 1941 Florida Statutes as subsection 347.19(2) was apparently to accord with the language of the 1931 act relating to the military forces' exemption.] As adopted by the 1931 act, s. 347.19(1), insofar as here relevant, reads as follows: Any person belonging to the military forces of the state . . . and all persons driving automobiles or other vehicles belonging to the military department of the state . . . when properly identified shall, together with any such conveyance and military personnel and property of the state in his charge, be allowed to pass free through all toll gates and over all toll bridges and ferries in this state. (Emphasis supplied.) The General Counsel of the Department of Transportation contends: If it were the intention of the legislature that the automobile or other means of conveyance should also be permitted to pass without charge, it would not have been necessary for the legislature to include in subsection (1) the reference to automobiles, means of conveyance, etc., with reference to the free passage of members of the military forces of the state. This argument assumes that, until the adoption of the 1931 act, members of the state militia, when going to and from military musters or other military service, were not exempt from the payment of bridge and ferry tolls except when traveling on foot. This is not a reasonable interpretation of the 1842 act, in my opinion. Plainly, members of the militia, like members of the clergy, were entitled to the exemption prior to 1931 whether they were traveling on foot, on horseback, or in a vehicle to and from a "muster" or other military service; and the purpose of the specific exemption of military vehicles in the 1931 act must have been to make clear that all vehicles in a military convoy, whether driven by a member of the military forces or a nonmilitary employee, were entitled to pass free through toll gates and over toll bridges and ferries. As such a situation would never exist as to members of the clergy, there would have been no reason to amend the 1842 act (s. 2752, C.G.L. 1927) to provide specifically that the right to pass free over toll bridges and ferries applied not only to the clergyman himself but also to automobiles and other vehicles "in his charge." For the reasons stated, I am not persuaded that the 1955 informal Attorney General Opinion referred to above and the provision of the 1931 act reorganizing the state militia and providing specifically for the free passage of motor vehicles in a military convoy should be given the effect ascribed to them by DOT; and I am of the opinion that the exemption from bridge and ferry tolls extended by s. 347.19(2), supra, to a clergyman or preacher of the gospel entitles him and the vehicle he is driving to free passage over a toll bridge or ferry. Your question is, therefore, answered in the affirmative.